1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

BRUCH REED, ERIK DAYTON, LEAH
BOGERT, TIFFANY MARTIN,
HEATHER CARSON, JOEL HAGANS,
FLORIN CARLIN, MAX ELLIOTT, LISA
SCHMID, and JUNE COLE, on behalf of
themselves, the general public, and those
similarly situated,

        Plaintiffs,

            v.

GENERAL MILLS, INC., SMALL
PLANET FOODS, INC., and DOES 1
THROUGH 50,

        Defendants.

NO.  2:19-cv-00005

**CLASS ACTION COMPLAINT**
FOR:

(1)  Fraud, Deceit, Fraudulent Nondisclosure,
     and/or Fraudulent Concealment;

(2)  Negligent Misrepresentation;

(3)  Violations of the Washington Consumer
     Protection Act, and Similar Laws of All
     Other States and the District of Columbia,
     Prohibiting False Advertising and Unfair,
     Unlawful, and Deceptive Trade Practices;
     and

(4)  Unjust Enrichment.


JURY TRIAL DEMANDED

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

1

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1         Plaintiffs Bruch Reed, Erik Dayton, Leah Bogert, Tiffany Martin, Heather Carson, Joel

2 Hagans, Florin Carlin, Max Elliott, Lisa Schmid, and June Cole ("Plaintiffs"), by and through

3 their counsel, bring this Class Action Complaint ("Class Action Complaint") on behalf of

4 themselves, those similarly situated, and the general public, against Defendants General Mills,

5 Inc., Small Planet Foods, Inc., and Does 1 through 50 (collectively, "Defendants"), for fraud,

6 negligent misrepresentation, violations of the Washington Consumer Protection Act ("CPA")

7 and similar laws prohibiting false advertising and unlawful, deceptive and unfair trade practices,

8 and unjust enrichment. The following allegations are based upon information and belief,

9 including the investigation of Plaintiffs' counsel, unless stated otherwise.

10 **INTRODUCTION**

11         1.      This case concerns Defendants' deceptive marketing and sale of Cascadian Farm

12 branded products. Defendants consistently mislead consumers into believing that all or a

13 substantial portion of the ingredients in Cascadian Farm products are grown on an organic farm

14 in Skagit Valley, a small region in the state of Washington along the Skagit River near the

15 Cascade Range, and that the farm and its business have continued in operation for decades

16 without being sold to and effectively replaced by a huge corporation.

17         2.      In truth, Defendants have owned and controlled the Cascadian Farm brand for

18 over 15 years and the packaged Cascadian Farm products sold throughout the United States are

19 not grown on a farm in Skagit Valley or near the Cascades. Rather, because Defendants are

20 multinational agrobusinesses, their food products are sourced from large industrial farms in other

21 places in the United States and the world.

22         3.      Defendants own and maintain some property in Washington State historically

23 associated with the Cascadian Farm brand for the purpose of misleading consumers about the

24 relationship of the products at issue to that farm and the surrounding region.

25         4.      Throughout the relevant period, Defendants have obtained substantial profits from

26 their deceptive and unfair practices.

27

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

2

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

5.      This action seeks: (i) a judgment requiring Defendants to pay damages to purchasers of the Cascadian Farm branded products equivalent to the price premiums paid for the products (*i.e.*, the difference between the price consumers paid for the products and the price that they would have paid but for Defendants' deceptive, misleading, confusing, unfair, and unlawful conduct, in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis) or to pay, as disgorgement or restitution, such wrongfully obtained premiums and any other benefits Defendants have obtained from sales of the products; (ii) an injunction prohibiting the sale of the Cascadian Farm branded products within a reasonable time after entry of judgment, unless the products' packaging and marketing are modified to eliminate the deceptive, misleading, confusing, unfair, and unlawful practices; (iii) an injunction prohibiting Defendants from using similarly deceptive, misleading, confusing, unfair, or unlawful marketing, branding, and labeling regarding the true origins and sources of their products, the nature of the companies in control of their products, and Defendants' relationship to the sources of the food products and to the original owners of the businesses and brands they acquire; (iv) statutory, enhanced, and/or punitive damages; and (v) costs and fees associated with this action.

## **PARTIES**

6.      Plaintiff Bruch Reed is an individual and a citizen of Illinois.

7.      Plaintiff Erik Dayton is, and was at all relevant times, an individual and a citizen of Washington.

8.      Plaintiff Leah Bogert is, and was at all relevant times, an individual and a citizen of Washington.

9.      Plaintiff Tiffany Martin is, and was at all relevant times, an individual and a citizen of Oregon.

10.     Plaintiff Heather Carson is, and was at all relevant times, an individual and a citizen of California.

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

3

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

11.     Plaintiff Joel Hagans is, and was at all relevant times, an individual and a citizen of Florida.

12.     Plaintiff Florin Carlin is, and was at all relevant times, an individual and a citizen of Florida.

13.     Plaintiff Max Elliott is, and was at all relevant times, an individual and a citizen of New York.

14.     Plaintiff Lisa Schmid is, and was at all relevant times, an individual and a citizen of New Jersey.

15.     Plaintiff June Cole is, and was at all relevant times, an individual and a citizen of Michigan.

16.     Defendant General Mills, Inc. ("General Mills") is a corporation incorporated under the laws of the State of Delaware and has its principal place of business in Minneapolis, Minnesota, and thus is a citizen of Delaware and Minnesota.

17.     Defendant Small Planet Foods, Inc. ("Small Planet") is a corporation incorporated under the laws of the State of Washington and has its principal place of business in Minneapolis, Minnesota, and thus is a citizen of Washington and Minnesota. Small Planet is a wholly-owned subsidiary of General Mills.

18.     The Defendants sued as Does 1 through 50 inclusive are individuals who participated in the tortious conduct alleged herein but whose true names and capacities are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave of Court to amend this Class Action Complaint when said true names and capacities have been ascertained.

19.     The Parties identified in paragraphs 16-18 of this Class Action Complaint are collectively referred to hereafter as "Defendants."

20.     With respect to the allegations herein, each of the Does was the agent, servant, representative, officer, director, partner or employee, of Small Planet and/or General Mills and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority

CLASS ACTION COMPLAINT,                    4
No. 2:19-cv-00005

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of Small Planet and/or General Mills.

21.     With respect to the allegations herein, Small Planet and General Mills were each other agents and, in doing the things herein alleged, were acting within the scope and course of their authority as such agents.

22.     With respect to the allegations herein, each of the Defendants was a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

23.     With respect to the allegations herein, the acts and omissions of each of the Defendants concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

24.     With respect to the allegations herein, each of the Defendants ratified each and every act or omission complained of herein. At all times herein mentioned, each of the Defendants aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) the Defendants and at least one Plaintiff are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

26.     Small Planet is incorporated in Washington, has a place of business in this District, and is subject to general personal jurisdiction in Washington.

27.     General Mills is subject to specific personal jurisdiction in this District because it purchased Small Planet (a Washington company with Washington assets) for the purpose of exploiting those assets (including but not limited to Small Planet's brands, marks, and goodwill), and exploiting Small Planet's associations with Skagit Valley, the Cascades, the "Home Farm,"

and Washington, to mislead consumers nationwide regarding the connection between those places and Cascadian Farm branded products.

28.     According to an annual report from General Mills for fiscal year 2014, Small Planet Foods was responsible for approximately $348 million in net sales in fiscal year 2014. Products sold under the Cascadian Farm brand constitute a large portion of Small Planet's sales.

29.     Since acquiring Small Planet, General Mills has continued to engage in activities directed toward Washington State related to the operation of Small Planet, the Cascadian Farm brand, and the deceptive marketing at issue, has purposely availed itself of the privileges of conducting Washington-related activities, and should reasonably expect to be subject to suit in Washington with respect to these matters. On information and belief, General Mills directed, assisted, and/or communicated with Small Planet employees and operations in Washington for years after it acquired Small Planet. On information and belief, General Mills directed, coordinated, participated in, and/or funded the acquisition of property constituting, near, and/or in connection with the so-called "Home Farm" in Rockport, Washington. On information and belief, General Mills directed, coordinated, participated in, and/or funded the generation, acquisition, use, and/or distribution of images from Washington for purposes of marketing Cascadian Farm products. On information and belief, General Mills has directed, participated in, facilitated, and profited from the acts and omissions alleged herein, including misleading statements regarding the alleged "Home Farm" in Skagit Valley, WA, and the efforts to mislead consumers in believing that Defendants' products originate from this District and that Defendants own and operate a "Home Farm" from which Cascadian Farm branded products originate.

30.     The claims in this lawsuit arise out of the Washington-related activities of General Mills.

31.     In 2014 or 2015, General Mills disbanded the separate Small Planet Foods operating division and incorporated its brands into larger divisions or segments within the corporation.  This reorganization is emblematic of the substantial control General Mills exercises

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

6

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

over Small Planet's operations (if Small Planet even has any operations distinct from General Mills) and the Cascadian Farm brand.

32.     Small Planet was the agent of General Mills with respect to Small Planet's involvement in the acts and omissions alleged herein concerning the Cascadian Farm brand and the misleading marketing concerning the "Home Farm," Skagit Valley, the Cascades, and Washington and with respect to the ownership and maintenance of what Defendants call their "Home Farm."

33.     Venue is proper in this Court under 28 U.S.C. § 1391 because (1) Small Planet is is subject to personal jurisdiction in this District; (2) General Mills is subject to personal jurisdiction in this District; and (3) Defendants regularly transact and solicit business in this District.

## SUBSTANTIVE ALLEGATIONS

**A.    Defendants' Misleading Marketing Covers Numerous Products.**

34.     This case concerns Defendants' marketing and sale of their food products under the brand name "Cascadian Farm" (the "Products"). The Products include but are not limited to:

(1)     Cascadian Farm Mango Strawberry Blend;

(2)     Cascadian Farm Cherry Berry Blend;

(3)     Cascadian Farm Harvest Berries;

(4)     Cascadian Farm Mango Chunks;

(5)     Cascadian Farm Blackberries;

(6)     Cascadian Farm Raspberries;

(7)     Cascadian Farm Blueberries;

(8)     Cascadian Farm Strawberries;

(9)     Cascadian Farm Sliced Peaches;

(10)    Cascadian Farm Cut Spinach;

(11)    Cascadian Farm Riced Cauliflower;

(12)    Cascadian Farm Beets;

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

7

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1          (13)    Cascadian Farm Kale;

2          (14)    Cascadian Farm Multi-Colored Carrots;

3          (15)    Cascadian Farm Broccoli Florets;

4          (16)    Cascadian Farm Swiss Chard;

5          (17)    Cascadian Farm Broccoli Cuts;

6          (18)    Cascadian Farm Cut Green Beans;

7          (19)    Cascadian Farm Edamame Shelled Soybeans;

8          (20)    Cascadian Farm Edamame Soybeans in the Pod;

9          (21)    Cascadian Farm Sweet Peas;

10         (22)    Cascadian Farm Garden Peas;

11         (23)    Cascadian Farm Sweet Corn;

12         (24)    Cascadian Farm Peas and Carrots;

13         (25)    Cascadian Farm Mixed Vegetables;

14         (26)    Cascadian Farm Riced Cauliflower Blend with Bell Peppers & Onions;

15         (27)    Cascadian Farm Riced Cauliflower with Roasted Sweet Potatoes & Kale;

16         (28)    Cascadian Farm Riced Cauliflower Blend with Stir-Fry Vegetables;

17         (29)    Cascadian Farm Mirepoix;

18         (30)    Cascadian Farm Chinese-Style Stirfry Blend;

19         (31)    Cascadian Farm California-Style Blend;

20         (32)    Cascadian Farm Gardener's Blend;

21         (33)    Cascadian Farm Asparagus Cuts;

22         (34)    Cascadian Farm Whole Petite Green Beans;

23         (35)    Cascadian Farm Winter Squash;

24         (36)    Cascadian Farm Purely Steam Broccoli and Carrots;

25         (37)    Cascadian Farm Purely Steam Garden Vegetable Medley;

26         (38)    Cascadian Farm Country Style Potatoes;

27         (39)    Cascadian Farm Crinkle Cut French Fries;

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

| | | |
|---|---|---|
| 1 | (40) | Cascadian Farm Straight Cut French Fries; |
| 2 | (41) | Cascadian Farm Wedge Cut Oven Fries; |
| 3 | (42) | Cascadian Farm Hashbrowns; |
| 4 | (43) | Cascadian Farm Spud Puppies; |
| 5 | (44) | Cascadian Farm Root Vegetable Hashbrowns; |
| 6 | (45) | Cascadian Farm Fire Roasted Sweet Potatoes; |
| 7 | (46) | Cascadian Farm Sweet Relish; |
| 8 | (47) | Cascadian Farm Apricot Fruit Spread; |
| 9 | (48) | Cascadian Farm Blackberry Fruit Spread; |
| 10 | (49) | Cascadian Farm Blueberry Fruit Spread; |
| 11 | (50) | Cascadian Farm Concord Grape Fruit Spread; |
| 12 | (51) | Cascadian Farm Raspberry Fruit Spread; |
| 13 | (52) | Cascadian Farm Strawberry Fruit Spread; |
| 14 | (53) | Cascadian Farm Apple Juice Frozen Concentrate; |
| 15 | (54) | Cascadian Farm Cranberry Juice Frozen Concentrate; |
| 16 | (55) | Cascadian Farm Grape Juice Frozen Concentrate; |
| 17 | (56) | Cascadian Farm Lemonade Juice Frozen Concentrate; |
| 18 | (57) | Cascadian Farm Orange Juice Frozen Concentrate; |
| 19 | (58) | Cascadian Farm Lemon Blueberry Granola; |
| 20 | (59) | Cascadian Farm Strawberry Granola; |
| 21 | (60) | Cascadian Farm Oats and Honey Granola; |
| 22 | (61) | Cascadian Farm Ancient Grains Granola; |
| 23 | (62) | Cascadian Farm Cinnamon Raisin Granola; |
| 24 | (63) | Cascadian Farm Dark Chocolate Almond Granola; |
| 25 | (64) | Cascadian Farm French Vanilla Almond Granola; |
| 26 | (65) | Cascadian Farm Fruit and Nut Granola; |
| 27 | (66) | Cascadian Farm Maple Brown Sugar Granola; |

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

9

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

(67)   Cascadian Farm Vanilla Chia Crunch Granola;

(68)   Cascadian Farm Gluten Free Berry Vanilla Puffs;

(69)   Cascadian Farm Cinnamon Crunch;

(70)   Cascadian Farm Honey Oat Crunch;

(71)   Cascadian Farm Buzz Crunch Honey Almond;

(72)   Cascadian Farm Graham Crunch;

(73)   Cascadian Farm Fruitful O's;

(74)   Cascadian Farm Hearty Morning;

(75)   Cascadian Farm Honey Nut O's;

(76)   Cascadian Farm Multi Grain Squares;

(77)   Cascadian Farm Purely O's;

(78)   Cascadian Farm Raisin Bran;

(79)   Cascadian Farm Mixed Nut Sweet & Salty Chewy Granola Bars;

(80)   Cascadian Farm Peanut, Puffed Rice & Quinoa Sweet & Salty Chewy Granola Bars;

(81)   Cascadian Farm Peanut Pretzel Sweet & Salty Chewy Granola Bars;

(82)   Cascadian Farm Peanut Butter Chocolate Chip Chewy Granola Bars;

(83)   Cascadian Farm Chocolate Chip Chewy Granola Bars;

(84)   Cascadian Farm Harvest Berry Chewy Granola Bars;

(85)   Cascadian Farm Oatmeal Raisin Chewy Granola Bars;

(86)   Cascadian Farm Vanilla Chip Chewy Granola Bars;

(87)   Cascadian Farm Oats and Honey Crunchy Granola Bars;

(88)   Cascadian Farm Peanut Butter Crunchy Granola Bars;

(89)   Cascadian Farm Peanut Butter Chocolate Chip Protein Chewy Bars;

(90)   Cascadian Farm Honey Roasted Nut Protein Chewy Bars;

(91)   Cascadian Farm Wild Blueberry Soft Baked Squares; and

(92)   Cascadian Farm Oats & Chocolate Soft Baked Squares.

10

35.     This case arises from Defendants' repeated use of misrepresentations, deceptive, misleading, confusing, unfair, and unlawful marketing and labeling, and wrongful omissions or concealments to deceive and mislead consumers into believing that the Products (or a substantial fraction thereof) are grown in Skagit Valley or in or near the Cascades, that the primary purpose of the "Home Farm" in Skagit Valley is to provide produce as a source for the Products, that the "Home Farm" has a substantial role in the origin of the Products, and that the farm and its business have continued in operation for decades without being sold to and effectively replaced by a huge corporation, when the Products are in fact sourced from large industrial farms in various other places in the United States and the world.

**B.     Defendants Falsely and Misleadingly Label and Market Their Products as Being from a Small Farm in Skagit Valley, WA and the Cascades Region.**

36.     Defendants' brand name, "Cascadian Farm" appears in large, bold letters in a banner on the front of each of the Product packages and, both in itself and in conjunction with other elements, implies that the Products are grown on a farm in or near the Cascade Range.

37.     Each of the Product packages also includes, on the front of the package (and sometimes also on the back), a prominent circular mark or logo by the "Cascadian Farm" name with the phrases "SKAGIT VALLEY, WA" and "SINCE 1972." Toward the top of the logo, the Product packages state either "VISIT OUR HOME FARM" or "FOUNDED IN SKAGIT VALLEY, WA." On the front of each of the Product packages, the circular mark either contains or is surrounded by a prominent picture of a farm with mountains in the background. The combination of these words and images represent, imply, and suggest that the Products (or a substantial fraction of Cascadian Farm Products) come from a farm in Skagit Valley and are grown in or near the Washington Cascades, that the primary purpose of the Skagit Valley farm is to provide produce as a source for the Products, that the Skagit Valley farm has a substantial role in the origin of the Products, and that the farm and its business have continued in operation for decades without being sold to and effectively replaced by a huge corporation. For example, below is a photograph of the front of a package of the Cascadian Farm Harvest Berries.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   38.   The fronts of the packages of the Products are substantially similar with respect to

19 the elements referenced in paragraph 37 above, except for the name of the product and the fruit

20 or vegetable depicted. Additional images of packaging/labels for the Products, from Defendants'

21 website (www.cascadianfarm.com/products), are attached hereto as Exhibit A. Each of the

22 Plaintiffs viewed and relied upon the common and similar elements of the Products' packaging

23 design in making purchases of the Products.

24   39.   General Mills also promotes Cascadian Farm Products on its website. Below is an

25 image of the packaging design for Cascadian Farm Sweet Corn from the General Mills website:

26
27

CLASS ACTION COMPLAINT,                         12                    **Gutride Safier LLP**
No. 2:19-cv-00005                                                    113 Cherry Street, #55150
                                                                     Seattle, WA 98140
                                                                     (415) 639-9090 x109

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19       40.    Defendants' branding, marks, marketing, labels, and packaging with respect to

20   Cascadian Farm Products are intended to and/or have the effect of distinguishing the source or

21   origin of the Cascadian Farm Products from the source or origin of competing products, in the

22   minds of consumers.

23       41.    The front sides of all of the Products' packaging are false, misleading, confusing,

24   unfair, and unlawful and satisfy the elements of Plaintiffs' claims as set forth herein.

25       42.    Moreover, none of the Products' packages prominently and adequately disclose

26   (on any side of the packages) the true origins of the Products and the true relationship of the

27   "home farm" and of Skagit Valley to the Products and to Defendants' Cascadian Farm business.

CLASS ACTION COMPLAINT,           13           **Gutride Safier LLP**
No. 2:19-cv-00005                                113 Cherry Street, #55150
                                            Seattle, WA 98140
                                            (415) 639-9090 x109

1  In fact, on other portions of the Products' packaging, Defendants continue to represent and imply

2  that the Products come from farmland near the Cascades in Washington and from a farming and

3  food production company that continues to have a substantial connection to that region and that

4  has continued in operation for decades without being sold to and effectively replaced by a huge

5  corporation.

6       43.    On all of the packages, the location of Small Planet is identified as "Sedro-

7  Woolley, WA." However, in its Annual Reports filed with the Washington Secretary of State

8  from 2007-2018, Small Planet has consistently identified its principal place of business as One

9  General Mills Boulevard, Minneapolis, MN 55426.

10       44.    The backs of most of the Products' packages include an image depicting a scene

11  apparently in the Cascades region and one or more textual references to the Skagit Valley, a

12  home farm, and/or the beginning of the farm in 1972. Defendants refer to the past and present

13  using the terms "we" and "our," without indicating any acquisition of the business by General

14  Mills. Defendants include profiles of the founder, a head farmer, or employee on many of the

15  packages. The packaging emphasizes certifications from the Washington State Department of

16  Agriculture and the U.S. Department of Agriculture.

17       45.    In contrast to all of this easily readable information and marketing, there is no

18  prominent indication on the front or back of the packages that the Products are sourced from

19  other states or countries. To the extent Defendants include disclosures of the foreign origin of

20  certain Products, they do so in a manner likely not to be noticed by consumers. If Defendants do

21  state the true origin of such products, they do so by placing a phrase such as "Product of Chile"

22  in small font near an edge or a flap on the back of the package. The font is much smaller than the

23  various references to the Cascades, Skagit Valley, and the "Home Farm" and it is designed not to

24  draw attention relative to the words and images covering the rest of the packaging. In some

25  cases, it is printed sideways and, thus, is only readable if the consumer turns the Product package

26  sideways and examines the small text box. For example, below is a photograph of the back of a

27

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1   package of the Cascadian Farm Harvest Berries, depicting the disclosure in the small blue box

2   towards the bottom:



19       46.      On all of the Products' packages and in all marketing materials displayed to

20   consumers, Defendants fail to adequately disclose that the Products were <u>not</u> grown on farmland

21   in Skagit Valley or near the Cascades in Washington, that the "home farm" does <u>not</u> have a

22   substantial role in the sourcing of any of the Products, and that the Products are part of a large

23   multinational agrobusiness that, with respect to the sourcing, marketing, and sale of the Products,

24   has long since replaced the small farming business started by Eugene Kahn in the 1970s.

25   Defendants' minimalist disclosures on certain packages, in small font, that certain Products come

26   from another country are designed in a manner not to be noticed by reasonable consumers and do

27

not cure or negate the larger and more prominent false, deceitful, misleading, unlawful, and unfair marketing that exists on all of the Products' packages.

47.    On Amazon.com, Defendants again combine their misleading logo with a picture of a farm purportedly in the Cascades region, and add the promotional line "From Our Foothills to Your Favorite Dishes" for some of the Products:



**From Our Foothills to Your Favorite Dishes**

48.    Amazon.com and its Prime Now delivery service sell Products to consumers by displaying images of the fronts of packages for the Products, with the names of the Products and the prices, to potential consumers. These images and marketing originate from Defendants.

49.    FreshDirect also sells Cascadian Farm Products by displaying images of the fronts of packages for the Products with the names of the Products and the prices. These images and marketing originate from Defendants.

50.    Such marketing—especially in light of the conjunction, proximity, and saturation of such items on packages and elsewhere, and the absence of any similarly prominent disclosures that the Products do not originate from the "Home Farm," Skagit Valley, Washington, or even, in many cases, the United States—is knowingly designed to represent, imply, suggest, and mislead consumers to believe, incorrectly, that (a) the Products they are purchasing were grown on a farm in Skagit Valley in the Cascades region of Washington; (b) a substantial fraction of the ingredients in Defendants' Products were and are grown in Skagit Valley, Washington State, and the Cascades region; (c) the primary purpose of the "Home Farm" in Skagit Valley is to provide

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

produce as a source for the Products; (d) the "Home Farm" has a central or substantial role in the origin of the Products; and (e) the farm and its owner's business have continued in operation for decades without being sold to and effectively replaced by a huge corporation. A reasonable consumer would expect those beliefs to be true based on the Products' packaging.

51.     Defendants' marketing and packaging are false, deceptive, and misleading, because the Products are either sourced from foreign countries, such as Mexico, Chile, and Ecuador, and imported into the United States (hereinafter "Imported Products"), or grown on industrial farms that are not located in or near the Skagit Valley and that do not have idyllic characteristics or associations that customers value.

52.     In reality, Defendants' "Home Farm" is just a modest shop or stand, which primarily sells ice cream, coffee, various General Mills products, and (seasonally) certain produce, such as blueberries, corn, and pumpkins. Below are pictures of the outside and inside of the "Home Farm" in Rockport, WA:



Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27





CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

18

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

53.     On Yelp, the "Cascadian Farm" (the "home farm" location) appears under the categories for "Ice Cream & Frozen Yogurt" and "Organic Stores." Most of the reviews discuss the ice cream.

54.     The "Home Farm" is a marketing ploy; it is not where the Products are grown.

55.     The "Home Farm" is not a significant part of the supply chain Defendants manage for the Products identified on Defendants' websites at www.cascadianfarm.com/products/ and www.generalmills.com/en/Brands/organic-natural/cascadian-farm/brand-product-list.

56.     The "Home Farm" did not supply even 1% of any of the Products sold in the United States during any of the past several years.

57.     While some of the land around the shop/stand at the "Home Farm" may be used to grow produce (such as blueberries, corn, and pumpkins) for <u>local</u> sale, most of the property is not used to grow food for human consumption. General Mills has stated that only about 20 acres out of 99 acres is used to grow produce. Below is an overhead image of the property from Google Maps, further indicating that the "Home Farm" does not have the capacity or purpose to provide, and is not operated to provide, produce as a source for the packaged Products:



**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

58.    Defendants intend and know that consumers will and do rely upon food packaging statements in making their purchasing decisions. Packaging claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendants have done with their Cascadian Farm Products.

59.    The false and misleading marketing at issue in this case, and the effects thereof, are intended to and do bring additional value to Defendants, relative to a counterfactual in which Defendants did not engage in any such deceptive and unlawful marketing. In other words, the false and misleading marketing inflates both the prices and sales of the Products.

**C.    Defendants Have Utilized an Extensive and Long-Term Marketing and Advertising Campaign to Promote Cascadian Farm as a Farm in the Cascades to Obscure the Fact that They Are Multinational Agrobusinesses.**

60.    To unfairly and unlawfully attempt to capitalize on consumers' desires for organic food grown on domestic farms in scenic locations in the Northwest, Defendants have employed a variety of long-term marketing and advertising campaigns and strategies to deceive consumers into believing that the Products are grown on a farm in the Cascades or have a substantial connection to such a farm and that the farm and its business have continued in operation for decades without being sold to and effectively replaced by a huge corporation. The reality is, however, that the marketing of the Cascadian Farm brand is directed and controlled by Defendant General Mills, which uses Defendant Small Planet as a front, enabling it to conceal the fact that consumers are not buying from a small, organic company in the Skagit Valley region in Washington, but from a massive, multinational agrobusiness, which has purchased the produce it sells under the Cascadian Farm brand from large farms based all over the world.

61.    In or about 1972, Eugene Kahn founded a small farm in Rockport, WA, with a commitment to organic practices. Over the years, Mr. Kahn's business expanded into processing foods, including processing and distributing food grown by others. Mr. Kahn formed Cascadian Farm, Incorporated in 1988.

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

20

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

62.     In or about 2000, Cascadian Farm, Incorporated merged with two other entities (Small Planet Foods, L.L.C. and Muir Glen, L.L.C.) and changed its name to Small Planet Foods, Inc. Around the same time or shortly thereafter, Defendant General Mills acquired Small Planet.

63.     General Mills knew when it bought Small Planet, as it knows now, that consumers interested in purchasing organic produce tend to prefer to buy, and will pay more for, products from a long-standing bucolic farm run as a small or mid-sized business, and such consumers tend to avoid, or will pay less for, food from a massive, multinational corporation known for selling sugary cereals and other processed, chemically laden snacks.

64.     Thus, General Mills bought and maintained Small Planet as a separate subsidiary to hold out as the owner and manufacturer of foods made under the Cascadian Farm brand. Nevertheless, General Mills retained exclusive control of Small Planet and its decisions, and directed the marketing of that brand to ensure it retained its image of a small, local farm.

65.     Mr. Kahn, the founder of Cascadian Farm, assumed a job as Vice President, and later, Global Sustainability Officer at General Mills, where he oversaw the growth of the brand. In addition, General Mills eventually relocated some, if not all, of Small Foods' operations from Washington to Minneapolis, Minnesota, so that its employees could work at the General Mills headquarters.

66.     In its Annual Reports filed with the Washington Secretary of State since 2007, Small Planet describes its business as "Lessor of Intangibles" and not in agricultural or food-related terms. Small Planet's main function is to give General Mills the rights to the Cascadian Farm brand (and other intellectual property) and to allow General Mills to use Small Planet as a front to conceal the true nature and scope of General Mills' global Cascadian Farm business.

67.     General Mills continues to conduct much of the advertising for Small Planet. In an attempt to attract long-time General Mills consumers who might be interested in purchasing more organic produce from small or mid-size, American farms, General Mills promotes the Cascadian Farm brand heavily on its website. "Cascadian Farm" is listed as one of its organic,

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

21

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

natural brands. When products need to be recalled, it is General Mills that issues the recall notice. *See, e.g.*, https://www.usatoday.com/story/money/nation-now/2017/10/12/general-mills-recalls-cascadian-farm-cinnamon-raisin-granola-cereal-unlisted-nut-allergen/759493001/ (last accessed Jan. 2, 2019); https://www.foodsafetynews.com/2015/10/general-mills-again-recalls-cascadian-farms-frozen-green-beans-for-listeria-risk/ (last accessed Jan. 2, 2019). And when recruiting employees, General Mills hires employees itself. For example, a job advertisement on LinkedIn showed the General Mills logo next to the advertisement for a manager for the "farm":



68.     Recently, the General Mills website had a job posting for "Field Supervisor - Cascadian Home Farm," https://careers.generalmills.com/job/8849989/field-supervisor-cascadian-home-farm-rockport-wa/ (last accessed Jan. 2, 2019). The posting stated: "[a]t the heart of the brand is the 99 acre certified-organic Home Farm;" "[t]he Home Farm has roughly 20 acres in agricultural production and the remainder acreage is forested;" and "[c]rops are sold directly to the public through our seasonal farm stand and U-pick."

69.     Defendants have used a consistent, widespread marketing campaign, for the Products specifically and the Cascadian Farm brand generally, to suggest that all or many of their Products are grown on a farm in or near the Cascades, while failing to disclose and actively concealing the facts that the owners of the brand are multinational agrobusinesses, that the primary value of the "Home Farm" to Defendants is the misleading marketing for which it is

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1    used and not as a source for the Products, and that the Products are sourced from industrial farms

2    elsewhere in the United States and the world.

3         70.    For example, Defendants operate a website, www.cascadianfarm.com, to further

4    their deception. In a central location on the home page, consumers are presented with an option

5    to "tour OUR FARM." Clicking on the link takes consumers to a three and a half minute long

6    video, narrated by "Farmer Jim Meyer," who is described as the "General Manger of the

7    Cascadian Farm Home Farm." In the video, Defendants show idyllic farm scenes of individuals

8    hand-picking the produce and old, simple tractors, with the Cascade Mountains in the

9    background, while "Farmer Jim Meyer" describes the "natural beauty" of the area and the

10   benefits of organic farming. At no point in the video do Defendants state that the Products come

11   from locations outside of Skagit Valley, WA.

12        71.    On a different link on the home page called "Our Farm," consumers are taken to a

13   page that purports to tell the story of "The Farm." There it says that "Cascadian Farm is also a

14   real place – a working, active, productive farm dedicated to bringing wholesome organic food to

15   your table." https://www.cascadianfarm.com/our-farm/the-farm (last accessed Jan. 2, 2019). The

16   phrase "to your table" implies that the "Home Farm" is generating food that can be found in

17   stores and brought to customers' homes. While the story does say, "Today Cascadian Farm has

18   grown beyond our original farm", it does not identify any other locations, which suggests to

19   reasonable consumers that the farm has merely expanded in acreage. That page also includes

20   links to a "Farm Blog" and directions to visit the farm.

21        72.    Defendants also rely on social media to further their deception. For example,

22   throughout the class period they have operated a Facebook page —

23   https://www.facebook.com/CascadianFarm — that is followed or liked by more than 600,000

24   people. The Cascadian Farm Facebook page features photos of Western Washington, claims a

25   Rockport, WA location, and contains status updates about the "home farm" in Washington.

26   These status updates regularly appear in the Facebook feeds of many of the 600,000 people who

27   have elected to follow the page, and are further viewed by consumers who visit the page to seek

more information about the company. Defendants for example, use this Facebook page to promote the produce they grow on the "home farm," without disclosing that consumers who buy the Products are unlikely to receive produce from Skagit Valley, and may receive imported produce. Some examples of these posts are below:



Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   73.   Throughout the class period, Defendants regularly posted similar images and

16   comments to the Cascadian Farm Facebook feed. Defendants post these pictures with the intent

17   to convey to consumers that their Products are from a farm in or near the Cascades. Defendants

18   do not disclose on their Facebook feed that some of the Products advertised are imported and that

19   virtually all are not from a farm in the Cascades, but from elsewhere in the United States or

20   abroad.

21   74.   Defendants also operate a Twitter account, @cascadianfarm, which has over

22   10,000 followers. Defendants have operated this page since August 2009. On that page,

23   Defendants display photos of Western Washington and the Cascade Mountains, claim Skagit

24   Valley, WA as the farm's location, and, post status updates about the "home farm" in

25   Washington. Defendants post many of the same posts as they put on their Facebook page,

26   described in the preceding paragraph, as well as other similar posts.  For example:

27

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15





16    75.    As with their Facebook feed, Defendants post these pictures with the intent to

17  convey to consumers that the Products are from a farm in or near the Cascade Mountains.

18  Defendants do not disclose on their Twitter account that some of the Products advertised are

19  imported and that most, if not all, are not from a farm in the Cascades, but from elsewhere in the

20  United States or abroad.

21    76.    Defendants also maintain a Cascadian Farm Instagram account, cascadianfarm,

22  which has over 5,131 followers. On that Instagram account, they display photos of Western

23  Washington and the Cascade Mountains, and post photo status updates about the "home farm" in

24  Washington. Defendants post many of the same posts as they put on their Facebook and Twitter

25  pages, described in the preceding paragraphs, as well as other similar posts.  For example:

26
27

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1
2
3
4
5
6
7
8
9
10
11
12
13



14    77.    As with their Facebook and Twitter feeds, Defendants post these pictures with the

15  intent to convey to consumers that the Products are from a farm in or near the Cascade

16  Mountains. Defendants do not disclose on their Instagram page that some of the Products

17  advertised are imported and that virtually all are not from a farm in the Cascades, but from

18  elsewhere in the United States or abroad.

19    78.    Defendants also maintain a Cascadian Farm YouTube channel, available at

20  https://www.youtube.com/user/cascadianfarm, where they place promotional videos about the

21  brand. These videos get posted to the Cascadian Farm social media pages, such as Facebook and

22  Twitter. Many of the videos on the page feature the Cascade Mountains, and show the farm as a

23  small, local operation based entirely in the Skagit Valley. For example, one video entitled

24  "Cascadian Farm: The Ideal Behind the Place," features the Cascade Mountains and Skagit River

25  prominently, and show food being farmed in this location. This video has been viewed by more

26  than 1.5 million people. Other video topics are also chosen to convey the image of a small, local

27  farm in the Skagit Valley, such as a series featuring gardening tips from "Farmer Jim Meyer"

CLASS ACTION COMPLAINT,                    27                    **Gutride Safier LLP**
No. 2:19-cv-00005                                               113 Cherry Street, #55150
                                                               Seattle, WA 98140
                                                               (415) 639-9090 x109

and others about the benefits of organic farming. Like all of Cascadian Farm brand advertising, the videos on its YouTube channel do not disclose that some of the Products advertised are imported and that virtually all are not from a farm in the Cascades, but from elsewhere in the United States or abroad.

**D.    Defendants Have Collected a Price Premium for the Products by Promoting Cascadian Farm as an Actual Farm in the Cascades Where Products Are Grown and by Obscuring the Fact that They Are Multinational Agrobusinesses.**

79.    Defendants understood that there was substantial demand throughout the United States for organic food products perceived to have been grown in or near a specific, scenic region in the United States (such as the Cascades in Washington) or with substantial ties to a farm in or near a scenic region such as the Washington Cascades.

80.    Defendants understood that there was substantial demand throughout the United States for organic food products perceived to have been grown on a long-standing farm that is not just a front for a multinational corporation such as General Mills.

81.    Because of Defendants' false, deceptive, misleading, confusing, unfair, and unlawful representations, branding, labeling, and marketing concerning the Products' geographic origin, and concerning the nature, scale, location, and history of Defendants' Cascadian Farm business, Defendants are able to charge, and consumers are willing to pay, a higher price for all of the Products than what Defendants would charge if the Products were labeled and marketed in a truthful, non-deceptive, and fair manner. Foods that are perceived to be grown in the United States, especially if perceived to be grown on a particular, long-standing organic farm in or near a bucolic region such as Skagit Valley, command a higher price in the market than foods grown in other countries, or on industrial farms with less attractive imagery and associations, and which are procured and distributed by multinational corporations.

82.    For example, on February 20, 2018, a consumer who shopped at the grocery store Berkeley Bowl via Instacart.com would find that a ten ounce bag of Cascadian Farm Organic Broccoli Florets cost $3.79, whereas a ten ounce bag of Woodstock Organic Broccoli Florets

cost just $3.19. Likewise, while a 10 ounce bag of Cascadian Farm Organic Strawberries cost $4.99, a ten ounce bag of Cadia Organic Strawberries was just $4.09. Neither Cadia nor Woodstock made any representations as to the geographic origins of their products on the front of the package.

83.     If Defendants made clear to consumers that the Products are not from a specific farm or specific region in or near the Cascades but are imported or are from large industrial farms elsewhere in the United States, that the "home farm" is essentially a marketing ploy that does not have a substantial role in the production of Defendants' Products, and that the current owners and operators of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, consumers would pay less for the Products.

**E.     Defendants' Geographic Representations Are Not Only Deceptive, Misleading, or Confusing to Reasonable Consumers But Are Expressly Unlawful Under Multiple Statutes, Regulations, and Policies.**

84.     Federal and state statutes expressly prohibit food labels from being false or misleading as a general matter. *See, e.g.*, 21 U.S.C. § 343(a); Cal. Health & Saf. Code §§ 110100(a), 110380, 110505, 110660; Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civil Code § 1770; D.C. Code § 28-3904; Fla. Stat. §§ 501.201, 817.41, 817.44; 410 Ill. Comp. Stat. § 620/11; 815 Ill. Comp. Stat. §§ 505/2, 510/2; Mich. Comp. Laws § 445.903; N.J. Stat. Ann. § 24:5-17(a); N.J. Stat. Ann. § 56:8-1; N.Y. Agric. & Mkts. Law § 201(1); N.Y. Gen. Bus. Law §§ 349, 350-a; Or. Rev. Stat. § 646.608; Wash. Rev. Code § 19.86.010.

85.     Furthermore, federal and state laws or regulations specifically prohibit Defendants from misleading consumers regarding the geographic origins of the Products.

86.     Washington law provides that agricultural commodities not grown in Washington "shall not be advertised, labeled, described, sold, marked, or otherwise held out as 'Washington state grown,' or in any way as to imply that such product is a Washington state grown or raised agricultural commodity." *See* Wash. Rev. Code § 15.04.010.

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

29

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

87.     The Washington-related marketing on the packaging of the Products, online, and in other advertisements and elsewhere includes but is not limited to: the prominent and repeated references to the terms "Cascadian Farm," "Home Farm," "Skagit Valley," and "Washington" or "WA;" the prominent and repeated references to the supposed continuation of a farming business "since 1972;" the prominent and multiple bucolic images of farmland in the Cascades; references to farmers or employees located in Washington; the identification of Small Planet as the distributor in "Sedro-Woolley, WA;" and prominent references to certifications from the Washington State Department of Agriculture. The totality of Defendants' labeling and marketing practices, especially the large images of farmland in or by the Cascades and the large, eye-catching, and centrally located phrases "Cascadian Farm" and "Skagit Valley" on the front, represents or implies that the Products are grown in Washington. Because the Products are not Washington-grown, Defendants' packaging, labeling, and marketing violate RCW 15.04.010.

88.     In addition, the United States Food and Drug Administration (the "FDA") has promulgated regulations governing misbranding of food and providing that food is misbranded if its label "expresses or implies a geographical origin of the food" except, in relevant part, when such representation is "[a] truthful representation of geographical origin." *See* 21 C.F.R. § 101.18(c)(1). Because the representations on the Products' packages regarding the origins of the Products are misleading and not truthful, the Products are misbranded and their labels violate 21 C.F.R. § 101.18 and 21 U.S.C. § 343(a) and state laws and regulations that incorporate or match these federal labeling regulations. *See, e.g.*, Cal. Health & Saf. Code §§ 110100(a), 110380, 110505, 110660; N.J. Stat. Ann. § 24:5-17(a); N.J. Admin. Code tit. § 8:21-1.3; N.Y. Agric. & Mkts. Law § 201(1); N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1. Other state laws similarly prohibit practices that are deceptive or likely to cause confusion or misunderstanding with respect to the source or geographic origin of a product. *See, e.g.*, Cal. Civil Code § 1770(a)(2) & (4); D.C. Code § 28-3904(a) & (t); Mich. Comp. Laws § 445.903(1)(a) & (b); Or. Rev. Stat. § 646.608(1)(b) & (d).

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

89.     While the FDA regulations permit a geographical representation in a trademarked name (21 C.F.R. § 101.18(c)(2)), that exception applies where the trademark or trade name is not deceptively misdescriptive, such as if it is generally understood by the consumer to mean the product of a particular manufacturer or distributor. Here, the brand name is not the only representation and labeling feature at issue (Defendants' use a combination of pictures of the Cascades region, the brand name "Cascadian Farm," representations about a "Home Farm" in Skagit Valley, and representations about the company's long-time association with that region, while Defendants conceal and fail to disclose the true sources of the Products, the true role of the "Home Farm," and the true role of multinational corporation General Mills); consumers understand the representations to describe the geographic origins of the product in addition to the brand's trademark; and consumers generally do not understand Defendants' roles as manufacturers or distributors.

90.     FDA regulations further require that labels for the Products "specify conspicuously the name and place of business of the manufacturer, packer, or distributor," by stating "the actual corporate name" and "the street address, city, State, and ZIP code" of the manufacturer, packer, or distributor. 21 CFR § 101.5. The street address may be omitted "if it is shown in a current city directory or telephone directory." *Id.* "If a person manufactures, packs, or distributes a food at a place other than his principal place of business, the label may state the principal place of business in lieu of the actual place where such food was manufactured or packed or is to be distributed, unless such statement would be misleading." *Id.*

91.     Defendants violated 21 CFR § 101.5, and state laws and regulations incorporing or matching that regulation, by falsely or misleadingly stating on all the packages for the Products "Distributed By: Small Planet Foods, Inc. Sedro-Woolley, WA 98284" (or substantially similar phrasing). Small Planet's principal place of business is in Minneapolis, Minnesota. Small Planet does not actually distribute the Products from Sedro-Woolley. Small Planet is not listed in the Sedro-Woolley Chamber of Commerce website directory (http://sedro-woolley.chambermaster.com/list/). Whitepages.com does not indicate an address for Small

1   Planet in Sedro-Woolley but does identify the address of its principal place of business in

2   Minneapolis. It also appears that Small Planet is not the actual distributor of the Products, given

3   the description of its business as a "Lessor of Intangibles" in its corporate filings.

4       92.     The Tariff Act of 1930, as amended, requires that articles of foreign origin or their

5   containers be marked to indicate the country of origin of the article, "in a conspicuous place as

6   legibly, indelibly, permanently as the nature of the article (or container) will permit." 19 U.S.C.

7   § 1304. The statute also authorizes the Secretary of the Treasury to make regulations to require

8   "the addition of any other words or symbols which may be appropriate to prevent deception or

9   mistake as to the origin of the article." *Id.*

10      93.     Title 19, Chapter 1, Part 134 of the Code of Federal Regulations sets forth

11  regulations implementing the geographic origin marking requirements. 19 C.F.R. § 134.46

12  requires that:

13          In any case in which the . . . the name of any city or location in the United
14          States . . . appear on an imported article or its container, and those words, letters
            or names may mislead or deceive the ultimate purchaser as to the actual country
15          of origin of the article, there shall appear legibly and permanently in close
            proximity to such words, letters or name, and in at least a comparable size, the
16          name of the country of origin preceded by "Made in," "Product of," or other
            words of similar meaning.

17

18      94.     The packages of all of Defendants' Products contain prominent domestic-origin

19  claims, including the prominent use of "CASCADIAN FARM" and "SKAGIT VALLEY, WA."

20  These United States locations are not the location where the Products are grown. Yet, in

21  violation of 19 C.F.R. § 134.46, Defendants do not include on the Imported Products, "in close

22  proximity" or in comparable size to the "CASCADIAN FARM" and "SKAGIT VALLEY, WA"

23  representations, any indication of the true country of origin of the Imported Products, preceded

24  by "Made in," "Product of," or other words of similar meaning. Instead, Defendants state only on

25  the back of all the Imported Products' packages appearing, in much smaller font, a notation such

26  as: "Product of Chile."

27

CLASS ACTION COMPLAINT,                             32                    **Gutride Safier LLP**
No. 2:19-cv-00005                                                        113 Cherry Street, #55150
                                                                        Seattle, WA 98140
                                                                        (415) 639-9090 x109

95.     In a letter ruling identified as N130295, dated November 24, 2010, the U.S. Customs and Border Protection explained that a tin of olive oil, which stated "Imported from Italy" prominently on the side panel, was in violation of the Tariff Act, because the olives were pressed and grown elsewhere, and the company had only disclosed that fact by printing a key identifying the true countries of origin in small font towards the bottom of the side panel.

96.     An exception exists if the ingredients from various countries are "substantially transformed" into a new product in a single country, in which case the country where the substantial transformation occurred can be claimed as the country of origin. 19 C.F.R. 134.1(b). However, the blending or mixing together of ingredients from multiple countries does not constitute a "substantial transformation." In a letter ruling identified as HQ 735085, dated June 4, 1993, Customs explained that a package containing produce grown in various countries, transported to Mexico, where it was mixed with produce grown in Mexico, did not undergo a substantial transformation in Mexico and must identify the countries of origin of all the components.

97.     In addition to violating the above-identified regulations, Defendants' use of the brand name "CASCADIAN FARM," the prominent display of "SKAGIT VALLEY, WA", and the photograph and/or image of a farm located in or near the Cascade Mountains on the front of all the Product packages, are likely intended to, and do, mislead consumers into believing that the Products are grown in the United States, specifically, on a farm in Skagit Valley in or near the Cascades. Defendants continue that misleading theme on other portions of the packages, by using the name "Cascadian Farm," images intended to reference the farm and/or the Cascade region, references to "Skagit Valley, WA," and the terms "we" and "our" in discussing the farm and its history; by identifying the address of Small Planet as "Sedro-Woolley, WA;" by emphasizing certifications from the Washington State Department of Agriculture and the U.S. Department of Agriculture; and by concealing (especially in contrast to the foregoing, and more easily viewable, information and marketing) the true origin of the Products. The small, minimalist information on the backs or edges of the package, which discloses the actual non-

USA origin of some of the fruits and vegetables, does not lessen Defendants' deception because, as the U.S. Court of Appeals for the Ninth Circuit has stated, "reasonable consumers…should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print on the side of the box." *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008).

98.    Defendants' practices with respect to the Imported Products also run afoul of the "Made in the USA" policy of the Federal Trade Commission ("FTC"). Per those rules, marketers should be wary of  using U.S. geographic references when "all or virtually all" of the product are not of U.S. origin. As the FTC has explained:

> For example, assume that a company advertises its product in an advertisement that features pictures of employees at work at what is identified as the company's U.S. factory, these pictures are superimposed on an image of a U.S. flag, and the advertisement bears the headline "American Quality." Although there is no express representation that the company's product is "Made in USA," the net impression of the advertisement is likely to convey to consumers a claim that the product is of U.S. origin.

https://www.ftc.gov/public-statements/1997/12/enforcement-policy-statement-us-origin-claims (last accessed Jan. 2, 2019). Here, Defendants' practices with respect to the Imported Products violate this policy, as they utilize images of and representations about Skagit Valley and the Cascades region, without disclosing that the produce is grown abroad.

### PLAINTIFFS' EXPERIENCES

**A.    Plaintiff Bruch Reed.**

99.    Over the course of the past several years, Reed has purchased Cascadian Farm Products after reviewing the packaging of the Products. He purchased the Mixed Berries and Blueberries on multiple occasions, sometimes purchasing multiple packages a month. Between August 2011 and October 2016, Reed purchased Mixed Berries and Blueberries on multiple occasions at Whole Foods stores in New York City (Chelsea and Columbus Circle locations). Between October 2016 and December 2017, Reed purchased Mixed Berries and Blueberries on multiple occasions at a Whole Foods at 1440 P Street in Washington, DC. Prior to August 2011

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005                                     34

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1    and between January 2017 and November 2018, Reed purchased Mixed Berries and Blueberries

2    on multiple occasions at a Whole Foods in Chicago, Illinois (Lakeview locations).

3        100.    Prior to making those purchases, Reed observed the "Cascadian Farm" name, the

4    images of farmland in the Cascades region, and the references to Skagit Valley, the "home

5    farm," and "since 1972" on the packaging for those Products. Based on the Products' packaging,

6    Reed believed the Products were coming from a small farm in the Washington Cascades region

7    and from a farming and food production business that had continued in operation for decades

8    without being sold to and effectively replaced by a huge corporation.

9        101.    He understood that Cascadian Farm Products were more expensive than some

10   other brands, but he chose to buy those Products and paid more because he placed a value on

11   buying produce and food products from a farm located in the Pacific Northwest. Reed believes

12   that the standards and quality of food, soil, and farming practices in Washington and Oregon are

13   better than those elsewhere in the United States. He also wanted to support a successful family

14   farm, and Defendants led him to believe that he was doing that with his purchases of the

15   Products.

16       102.    At the time of his purchases, Reed was unaware that Cascadian Farm Products

17   were being sourced from large farms outside of Washington, and outside of the United States,

18   and that the Cascadian Farm business was part of General Mills.

19       103.    Had he known the true origins of the Cascadian Farm Products and that they were

20   not in fact from a farm in the Cascades or in the Pacific Northwest, Reed would not have

21   purchased the Products, or would have paid less for them.

22       104.    Had he known that the owners of the Cascadian Farm business are huge

23   corporations (General Mills and its subsidiary) that source Products from various industrial

24   farms, including outside the United States, and that Defendants' so-called "Home Farm" in

25   Skagit Valley is essentially a marketing ploy that has no significant role in the production of

26   Defendants' Products, Reed would not have purchased the Products, or would have paid less for

27   them.

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

**B.      Plaintiff Erik Dayton.**

105.     Over the course of the past two years, if not longer, Dayton has purchased Cascadian Farm Products at stores local to him in Everett, Washington, including Safeway, after reviewing the packaging of the Products. He purchased Cascadian Farm Blueberries and Cascadian Farm cereals on multiple occasions, including a package of Cascadian Farm Raisin Bran in or about November 2018.

106.     Prior to making those purchases, Dayton observed the "Cascadian Farm" name, the images of farmland in the Cascades region, and the references to Skagit Valley, the "home farm," and "since 1972" on the packaging for those Products. Based on the Products' packaging, Dayton believed the Products were coming from a small farm in the Washington Cascades region and from a farming and food production business that had continued in operation for decades without being sold to and effectively replaced by a huge corporation.

107.     He understood that Cascadian Farm Products were more expensive than some other brands, but he chose to buy those Products and paid more because he placed a value on buying produce and food products from a local farm.

108.     At the time of his purchases, Dayton was unaware that Cascadian Farm Products were being sourced from large farms outside of Washington, and outside of the United States, and that the Cascadian Farm business was part of General Mills.

109.     Had he known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, Dayton would not have purchased the Products, or would have paid less for them.

110.     Had he known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of Defendants' Products, Dayton would not have purchased the Products, or would have paid less for them.

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

C.     **Plaintiff Leah Bogert.**

111.    Within the past year, Bogert has purchased Cascadian Farm Products at stores local to her in Spokane, Washington, including Trader Joe's, Super1Foods, and Rosauers, after reviewing the packaging of the Products. She purchased some cereals (including Fruit and Nut Granola) and frozen vegetables (including Sweet Peas, Edamame Soybeans in the Pod, and Mixed Vegetables).

112.    Prior to making those purchases, Carson observed the "Cascadian Farm" name, the images of farmland in the Cascades region, and the references to Skagit Valley, the "home farm," and "since 1972" on the packaging for those Products. Based on the Products' packaging, Bogert believed the Products were coming from a small farm in the Washington Cascades region and from a farming and food production business that had continued in operation for decades without being sold to and effectively replaced by a huge corporation.

113.    Bogert understood that Cascadian Farm Products were more expensive than some other brands, but she chose to buy those Products and paid more because she placed a value on buying produce and food products from a local farm.

114.    At the time of her purchases, Bogert was unaware that Cascadian Farm Products were being sourced from large farms outside of Washington, and outside of the United States, and that the Cascadian Farm business was part of General Mills.

115.    Had she known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, Bogert would not have purchased the Products, or would have paid less for them.

116.    Had she known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of Defendants' Products, Bogert would not have purchased the Products, or would have paid less for them.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

**D.     Plaintiff Tiffany Martin.**

117.    Within the past two to three years, Martin has purchased Cascadian Farm

Products, including cereals and some frozen produce, at stores local to her in Oregon after

reviewing the packaging of the Products. For example, Martin purchased a package of Cascadian

Farm Blueberries on March 17, 2018 through Amazon Prime Now, and she purchased two

packages of Cascadian Farm Edamame at New Seasons Market in Beaverton, Oregon, on

September 16, 2018.

118.    Prior to making those purchases, Martin observed the "Cascadian Farm" name,

the images of farmland in the Cascades region, and the references to Skagit Valley, the "home

farm," and "since 1972" on the packaging for those Products. Based on the Products' packaging,

Martin believed the Products were coming from a small farm in the Washington Cascades region

and from a farming and food production business that had continued in operation for decades

without being sold to and effectively replaced by a huge corporation.

119.    Martin understood that Cascadian Farm Products were more expensive than some

other brands, but she chose to buy those Products and paid more because she placed a value on

buying produce and food products from a local farm.

120.    At the time of her purchases, Martin was unaware that Cascadian Farm Products

were being sourced from large farms outside of Washington, and outside of the United States,

and that the Cascadian Farm business was part of General Mills.

121.    Had she known the true origins of the Cascadian Farm Products and that they

were not in fact from a farm in the Cascades region, Martin would not have purchased the

Products, or would have paid less for them.

122.    Had she known that the owners of the Cascadian Farm business are huge

corporations (General Mills and its subsidiary) that source Products from various industrial

farms, including outside the United States, and that Defendants' so-called "Home Farm" in

Skagit Valley is essentially a marketing ploy that has no significant role in the production of

Defendants' Products, Martin would not have purchased the Products, or would have paid less for them.

**E.   Plaintiff Heather Carson.**

123.   Plaintiff Carson prefers organic food sold by small, independent American brands.

124.   Since at least 2009, Carson has been purchasing Cascadian Farm Products, after reviewing the packaging of the Products, at stores local to her in Los Angeles, California, including Nature Mart and Lassens in Echo Park and Los Feliz, Whole Foods in Glendale and Pasadena, and Erewhon in West Hollywood. Between 2009 and 2017, Carson purchased many Products. She primarily purchased frozen fruit, including Harvest Berries, Blackberries, Red Raspberries, Blueberries, Strawberries, Sliced Peaches, and Mango Chunks, and purchased such frozen fruit Products often (for daily consumption) until 2017, when she stopped making smoothies on an almost daily basis. She also occasionally purchased Cascadian Farm brand frozen vegetables, including spinach, green beans, sweet peas, edamame, and corn.

125.   Prior to making those purchases, Carson observed the "Cascadian Farm" name, the images of farmland in the Cascades region, and the references to Skagit Valley, the "home farm" in Washington, and "since 1972" on the packaging for those Products. Based on the Products' packaging, Carson believed the Products were coming from a small farm in the Washington Cascades region and from a farming and food production business that had continued in operation for decades without being sold to and effectively replaced by a huge corporation.

126.   Carson understood that Cascadian Farm Products were more expensive than some other brands, but she chose to buy those Products and paid more because she placed a value on buying produce from small or mid-size American farms.

127.   At the time of her purchases, Carson was unaware that Cascadian Farm Products were being sourced from large farms outside of Washington, and outside of the United States, and that the Cascadian Farm business was part of General Mills.

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

128.    Had she known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, Carson would not have purchased the Products, or would have paid less for them.

129.    Had she known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of Defendants' Products, Carson would not have purchased the Products, or would have paid less for them.

F.    **Plaintiff Joel Hagans.**

130.    Over the course of the past four years, if not longer, Hagans has purchased Cascadian Farm Products at stores local to him in Tallahassee, Florida, including Publix Super Market, after reviewing the packaging of the Products. He purchased the Harvest Berries and other frozen fruit on multiple occasions, including between 2014-2017 and as much as two to three bags a month. He also occasionally purchased some frozen vegetables, including Edamame and Broccoli Cuts, perhaps a few times a year.

131.    Prior to making those purchases, Hagans observed the "Cascadian Farm" name, the images of farmland in the Cascades region, and the references to Skagit Valley, the "home farm," and "since 1972" on the packaging for those Products. Based on the Products' packaging, Hagans believed the Products were coming from a small farm in the Washington Cascades region and from a farming and food production business that had continued in operation for decades without being sold to and effectively replaced by a huge corporation.

132.    Hagans understood that Cascadian Farm Products were more expensive than some other brands, but he chose to buy those Products and paid more because he placed a value on buying produce and food products from a small or mid-sized American farm.

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

133.   At the time of his purchases, Hagans was unaware that Cascadian Farm Products were being sourced from large farms outside of Washington, and outside of the United States, and that the Cascadian Farm business was part of General Mills.

134.   Had he known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, Hagans would not have purchased the Products, or would have paid less for them.

135.   Had he known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of Defendants' Products, Hagans would not have purchased the Products, or would have paid less for them.

**G.   Plaintiff Florin Carlin.**

136.   For the past few years, Carlin has been purchasing Cascadian Farm Products at stores local to her in St. Petersburg, Florida, including Publix Super Market, after reviewing the packaging of the Products. She has purchased Cascadian Farm cereals, including Fruit and Nut Granola, Oats and Honey Granola, and Vanilla Chia Crunch Granola, on many occasions within the past two years, and, until early 2018, she purchased Cascadian Farm frozen fruit, including Blueberries, when it was on sale.

137.   Prior to making those purchases, Carlin observed the "Cascadian Farm" name, the images of farmland in the Cascades region, and the references to Skagit Valley, the "home farm" in Washington, and "since 1972" on the packaging for those Products. Based on the Products' packaging, Carlin believed the Products were coming from a small farm in the Washington Cascades region and from a farming and food production business that had continued in operation for decades without being sold to and effectively replaced by a huge corporation.

138.   Carlin understood that Cascadian Farm Products were more expensive than some other brands, but she chose to buy those Products and pay more than she otherwise could have

CLASS ACTION COMPLAINT,                           41
No. 2:19-cv-00005

for other products because she placed a value on buying food products from small or mid-size American farms, particularly from Washington State. Carlin lived in Washington State at one point and the packaging made her believe the Products were coming from the region.

139.    At the time of her purchases, Carlin was unaware that Cascadian Farm Products were being sourced from large farms outside of Washington, and outside of the United States, and that the Cascadian Farm business was part of General Mills.

140.    Had she known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, Carlin would not have purchased the Products, or would have paid less for them.

141.    Had she known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of Defendants' Products, Carlin would not have purchased the Products, or would have paid less for them.

**H.    Plaintiff Max Elliott.**

142.    In May 2018, Plaintiff Elliott purchased a package of Cascadian Farm Spud Puppies and a box of Cascadian Farm Cinnamon Raisin Granola at a grocery store named Wild By Nature on Long Island, New York.

143.    Prior to making those purchases, Elliott observed the "Cascadian Farm" name, the images of the Cascade region, and the references to Skagit Valley, the "home farm" in Washington, and "since 1972" on the packaging for those Products. Based on the Products' packaging, Elliott believed the Products were coming from a small farm in the Washington Cascades region and from a farming and food production business that has continued in operation for decades without being sold to and effectively replaced by a huge corporation.

144.    Over the next few months, Elliott purchased Cascadian Farm Spud Puppies and Cascadian Farm brand frozen berries several times at Wild By Nature and perhaps also at Stop &

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

42

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

Shop in Massapequa, New York, and/or King Kullen in Massapequa Park, New York. He continued to observe the "Cascadian Farm" name, the images of the Cascade region, the references to Skagit Valley and to the "home farm" in Washington on the Products' packages prior to purchasing the Products, and continued to purchase the Products based on his belief that the Products were coming from a small farm in the Cascades Mountain region.

145.    Elliott understood that Cascadian Farm Products were more expensive than some other brands, but he paid more because he placed a value on buying produce from small or mid-size American farms.

146.    Until December 2018, Elliott was unaware that Cascadian Farm Products were being grown outside of Washington, and outside of the United States, and that the Cascadian Farm business was part of General Mills.

147.    Had he known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, Elliott would not have purchased the Products, or would have paid less for them.

148.    Had he known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of Defendants' Products, he would not have purchased the Products, or would have paid less for them.

**I.    Plaintiff Lisa Schmid.**

149.    Plaintiff Schmid prefers organic food sold by small, independent American brands, and does most of her grocery shopping via FreshDirect, an online grocery delivery service that specializes in fresh, healthy food.

150.    In approximately September 2013, while shopping on FreshDirect, Schmid noticed a large selection of Cascadian Farm Products, including frozen produce and cereals. When browsing FreshDirect, she could see the front of the package, as well as a brief description

CLASS ACTION COMPLAINT,                          43
No. 2:19-cv-00005

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

of the product. Schmid first noticed the Cascadian Farm brand name. She understood that Washington was known for being food conscious, and that the region prioritized locally grown food, organic farming, and small food-related businesses. She believed that the Cascadian Farm produce was grown and produced in Washington in a conscientious way, and decided to purchase a bag of Cascadian Farm Broccoli Florets for approximately $2.79.

151.    Over the next few years, Schmid began purchasing Cascadian Farm Products in New Jersey on approximately a weekly basis. She purchased a wide variety of Cascadian Farm brand produce, as well as cereal. She often observed the representation regarding the "home farm" in Skagit Valley, Washington, and continued to purchase the Products as she believed the produce was grown on a small farm in the Washington Cascades region. She typically made her purchases on FreshDirect, but sometimes bought Cascadian Farm Products while shopping at grocery stores near her in Perth Amboy, New Jersey. She knew that Cascadian Farm Products were more expensive than many other brands, but she paid more because buying produce from small American farms was important to her.

152.    In December 2018, Schmid learned that Cascadian Farm Products were not actually being grown on a small farm in Washington. She observed for the first time in small print on the back of bag of Cascadian Farm broccoli in her freezer that the product was "grown in Ecuador." Until that discovery, Schmid was unaware that Cascadian Farm Products were being grown outside of Washington, and outside of the United States.

153.    Had Schmid known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, she would not have purchased the Products, or would have paid less for them.

154.    Had Schmid known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of

Defendants' Products, she would not have purchased the Products, or would have paid less for them.

**G.    Plaintiff June Cole.**

155.    For the past couple of years, Cole has been purchasing Cascadian Farm Products at stores local to her in Novi, Michigan, likely including Kroger and/or Whole Foods, after reviewing the packaging of the Products. She has purchased Cascadian Farm cereals or granola, frozen vegetables (including mixed vegetables and Winter Squash), and frozen fruits (including Blueberries), on many occasions within the past two years.

156.    Prior to making those purchases, Cole observed the "Cascadian Farm" name, the images of farmland in the Cascades region, and the references to Skagit Valley, the "home farm" in Washington, and "since 1972" on the packaging for those Products. Based on the Products' packaging, Cole believed the Products were coming from a small farm in the Washington Cascades region and from a farming and food production business that had continued in operation for decades without being sold to and effectively replaced by a huge corporation.

157.    Cole understood that Cascadian Farm Products were more expensive than some other brands, but she chose to buy those Products and pay more than she otherwise could have for other products because she placed a value on buying food products from small or mid-size American farms and farms of the type depicted on the Products' packaging.

158.    At the time of her purchases, Cole was unaware that Cascadian Farm Products were being sourced from large farms outside of Washington, and outside of the United States, and that the Cascadian Farm business was part of General Mills.

159.    Had she known the true origins of the Cascadian Farm Products and that they were not in fact from a farm in the Cascades region, Cole would not have purchased the Products, or would have paid less for them.

160.    Had she known that the owners of the Cascadian Farm business are huge corporations (General Mills and its subsidiary) that source Products from various industrial farms, including outside the United States, and that Defendants' so-called "Home Farm" in

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1    Skagit Valley is essentially a marketing ploy that has no significant role in the production of

2    Defendants' Products, Cole would not have purchased the Products, or would have paid less for

3    them.

4    <u>**FUTURE HARM**</u>

5        161.    Defendants have shown that they can and will use subsidiaries, front companies,

6    and/or brand names in addition to misleading marketing to hide and/or distort the facts regarding

7    the true origins and sources of their products, the nature of the companies behind the products

8    (including the involvement and role of General Mills), and the Defendants' relationship to the

9    sources of the food products and to the original owners of the businesses and brands they

10   acquire.

11       162.    Absent injunctive relief, Plaintiffs cannot be certain at this time and in the future

12   whether a brand they might purchase is in fact owned and/or controlled by General Mills and

13   cannot be certain whether they can trust the information on food packages (designed by or

14   controlled by Defendants) to provide accurate, fair, and full information regarding the origins

15   and sources of the products and the identity and nature of the companies behind the products.

16   Such information is material to the purchasing decisions of Plaintiffs and those similarly situated.

17       163.    Because of Defendants' practices, and potential changes in the market (including

18   any decisions by Defendants to acquire or launch new brands), Plaintiffs and those similarly

19   situated will not know, at any given time, whether particular brands are owned by Defendants

20   and whether their marketing and labeling are truthful and fair. Thus, when shopping for

21   packaged food, Plaintiffs are likely to be repeatedly presented with false or misleading

22   information by Defendants, making it difficult to make informed purchasing decisions.

23       164.    As a result, Plaintiffs and those similarly situated will be unable to rely on

24   Defendants' advertisements and labels when shopping for packaged food products, absent an

25   injunction that prohibits Defendants from using false and misleading marketing, branding, and

26   labeling regarding the true origins and sources of their products, the nature of the companies

27

behind the products, and Defendants' relationship to the sources of the food products and to the original owners of the businesses and brands they acquire.

165.    Also, absent injunctive relief, Defendants' will be able to maintain higher prices for their products than they could charge without their deceptive and unfair practices and thus they deprive Plaintiffs and those similarly situated of a fair choice when shopping for such products. Plaintiffs and those similarly situated face ongoing and future harm because the price premium, the false and misleading packaging and marketing, and the lack of adequate disclosures prevents consumers from making fair comparisons between competing products.

166.    This threat of continuing and future harm includes but is not limited to the Cascadian Farm Products.

167.    Plaintiffs and those similarly situated might purchase Cascadian Farm Products in the future if Defendants no longer engage in practices that are false, misleading, unlawful, or unfair to consumers in the marketing and sale of the Products. Unless Defendants change their practices, Plaintiffs and those similarly situated will not reasonably be able to determine, promptly and prior to their purchases, whether a particular Cascadian Farm Product was grown in Washington (particularly in or near the Cascades) or whether it was grown elsewhere; nor will they be able to tell what Defendants' general relationships are to Skagit Valley, the "Home Farm," the Cascades, Washington State, and the farms represented in and farms similar to the ones depicted in Defendants' marketing for the Products and for the Cascadian Farm brand. Even in cases where Products have been designated as "Product of Mexico" or something similar, Plaintiffs and those similarly situated may not see the designation, given the design and arrangement of images, text, and packaging of the Products. Moreover, Plaintiffs and those similarly situated will still be uncertain and could be misled regarding (a) the significance of Defendants' references to "Cascadian Farm," Skagit Valley, the "Home Farm;" (b) Defendants' relationship to Skagit Valley, the "Home Farm," the Cascades, Washington, and farms represented in and/or similar to the ones depicted in Defendants' marketing for the Products and for the Cascadian Farm brand; and (c) the truth of Defendants' marketing and claims related to

1  the origins of their Products. As long as Defendants continue to use misleading and deceptive

2  labeling and marketing as to the origin of the Products, Plaintiffs and those similarly situated

3  continue to be deprived of truthful and accurate information on Defendants' packaging and other

4  marketing, are at risk of being misled again, will not be able to fairly compare Cascadian Farm

5  products to competing products (on factors such as price, origin, and the characteristics of the

6  farms and the seller), and will have anxiety and uncertainty when shopping for such products.

7        168.    Because of Defendants' practices, Defendants' are able to maintain higher prices

8  for the Products than they could charge without their deceptive and unfair practices and thus they

9  deprive Plaintiffs and those similarly situated of a fair choice when shopping for such products.

10  Plaintiffs and those similarly situated face ongoing and future harm because the price premium,

11  the false and misleading packaging and marketing, and the lack of adequate disclosures prevents

12  consumers from making fair comparisons between competing products.

13        169.    In sum, in the absence of the injunctive relief requested in this Complaint,

14  Plaintiffs and those similarly situated are likely to suffer additional harm.

15                                     **CLASS ALLEGATIONS**

16        170.    Plaintiffs bring this action against Defendants on behalf of themselves and all

17  others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil

18  Procedure. Plaintiffs seeks to represent the following groups of similarly situated persons,

19  defined as follows:

20
21            All persons who, during the applicable limitations period(s), purchased, in the United States, any of Defendants' Products (the "Class");

22            All members of the Class who purchased any of Defendants' Imported Products (the "Imported Subclass").

23        171.    Plaintiffs Dayton and Bogert further seek to represent the following groups of

24  similarly situated persons, defined as follows:

25
26            All members of the Class who made their purchases in Washington (the "Washington Subclass"); and

27            All members of the Imported Subclass who made their purchases in Washington (the "Imported Subclass for Washington").

172.    Plaintiff Martin further seeks to represent the following groups of similarly

situated persons, defined as follows:

> All members of the Class who made their purchases in Oregon (the
> "Oregon Subclass");

> All members of the Imported Subclass who made their purchases in
> Oregon (the "Imported Subclass for Oregon");

> All members of the Class who made their purchases through Amazon,
> including Prime Now (the "Amazon Subclass"); and

> All members of the Imported Subclass who made their purchases through
> Amazon, including Prime Now (the "Imported Subclass for Amazon").

173.    Plaintiff Reed further seeks to represent the following groups of similarly situated

persons, defined as follows:

> All members of the Class who made their purchases in Illinois (the
> "Illinois Subclass"); and

> All members of the Imported Subclass who made their purchases in
> Illinois (the "Imported Subclass for Illinois").

> All members of the Class who made their purchases in Washington, D.C.
> (the "D.C. Subclass"); and

> All members of the Imported Subclass who made their purchases in
> Washington, D.C. (the "Imported Subclass for D.C.").

174.    Plaintiff Carson further seeks to represent the following groups of similarly

situated persons, defined as follows:

> All members of the Class who made their purchases in California (the
> "California Subclass"); and

> All members of the Imported Subclass who made their purchases in
> California (the "Imported Subclass for California").

175.    Plaintiffs Hagans and Carlin further seek to represent the following groups of

similarly situated persons, defined as follows:

> All members of the Class who made their purchases in Florida (the
> "Florida Subclass"); and

> All members of the Imported Subclass who made their purchases in
> Florida (the "Imported Subclass for Florida").

176.    Plaintiffs Reed and Elliott further seek to represent the following groups of

similarly situated persons, defined as follows:

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

> All members of the Class who made their purchases in New York (the "New York Subclass"); and
>
> All members of the Imported Subclass who made their purchases in New York (the "Imported Subclass for New York").

177.    Plaintiff Schmid further seeks to represent the following groups of similarly situated persons, defined as follows:

> All members of the Class who made their purchases in New Jersey (the "New Jersey Subclass");
>
> All members of the Imported Subclass who made their purchases in New Jersey (the "Imported Subclass for New Jersey");
>
> All members of the Class who made their purchases through FreshDirect (the "FreshDirect Subclass"); and
>
> All members of the Imported Subclass who made their purchases through FreshDirect (the "Imported Subclass for FreshDirect").

178.    Plaintiff Cole further seeks to represent the following groups of similarly situated persons, defined as follows:

> All members of the Class who made their purchases in Michigan (the "Michigan Subclass");
>
> All members of the Imported Subclass who made their purchases in Michigan (the "Imported Subclass for Michigan").

179.    The classes referenced in paragraphs 170-178 above are referred to collectively herein as the "Proposed Classes."

180.    Excluded from the Proposed Classes are Defendants' officers, directors, legal representatives, successors, and assigns; any entity in which Defendants have a controlling interest; and judicial officers to whom this case is assigned and their immediate family members.

181.    Plaintiffs reserve the right to propose additional or alternative classes or subclasses, or to narrow the above class and subclass definitions. This reservation includes but is not limited to classes or subclasses involving purchasers in multiple states, involving subsets of Defendants' Products, involving types of purchases, or with respect to particular issues.

182.    This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

183.    Numerosity: Plaintiffs do not know the exact size of the class or subclass, but it is estimated that each is composed of more than 100 persons. The persons are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

184.    Common Questions Predominate: This action involves common questions of law and fact to the potential classes and subclass because each class and subclass member's claim derives from the common deceptive, misleading, confusing, unlawful and/or unfair statements and omissions that led Defendants' customers to believe that, and to pay a price premium based on, Defendants' representations that: the Products were grown in whole or in substantial part on a farm in Skagit Valley in the Cascades; the Products come from a farming and food production business that has continued in operation for decades without being sold to and effectively replaced by a huge corporation; and that the owner of the Cascadian Farm brand has continued to operate a "Home Farm" in Skagit Valley and that such farm has a substantial role in the origin of the Products and in the owner's business. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the classes and subclass to recover. Among the common questions of law and fact are:

a)    Whether Defendants' Products were grown on a farm in Skagit Valley in the Cascades;

b)    Where Defendants' Products were actually grown;

c)    What the significance and role of the "Home Farm" is with respect to the Products and Defendants' business;

d)    The nature of each of Defendants' relationship to each other, the Cascadian Farm business, and the Products;

e)    How and why Defendants developed and implemented the branding, labeling, and marketing at issue;

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

f) The value of the Cascadian Farm brand, marks, and marketing (including the misbranding) to Defendants;

g) Whether Defendants misled class members by, *inter alia*, using the brand name "Cascadian Farm," utilizing photographs/images of a farm in the Cascade mountains or other scenes from the Cascades on their Product packages, representing or implying that their Products originated from a farm in Skagit Valley, WA, and/or mischaracterizing the nature of their relationship to the "home farm" and to the original owner of the farm;

h) Whether Defendants' labeling, advertising, marketing, and nondisclosures regarding their Products sold to class members had the capacity or tendency, and/or was likely, to deceive class members and the general public;

i) Whether Defendants' labeling, advertising, marketing, and nondisclosures regarding their Products were otherwise confusing, unfair, or unlawful;

j) Whether Defendants engaged in the alleged conduct willfully, intentionally, knowingly, recklessly, or negligently;

k) Where Defendants' Products were distributed and sold, how many were distributed and sold at given times, and at what prices;

l) Defendants' revenues and profits from the Products;

m) The amount of the premium lost by class members and gained by Defendants as a result of such wrongdoing;

n) Whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

o) Whether class members are entitled to payment of actual, incidental, consequential, exemplary, statutory, and/or punitive damages plus interest thereon, and if so, what is the nature and amount of such relief.

185. Typicality: Plaintiffs' claims are typical of the class and subclass members. As set forth above, Plaintiffs purchased Defendants' Cascadian Farm Products in reliance on

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

Defendants' misrepresentations and omissions and they paid a price premium as a result of

Defendants' misconduct. Thus, Plaintiffs and the class members sustained the same injuries and

damages arising out of Defendants' conduct in violation of the law. The injuries and damages of

each class member were caused directly by Defendants' wrongful conduct in violation of law as

alleged.

186.    Adequacy: Plaintiffs will fairly and adequately protect the interests of all class

members because it is in their best interests to prosecute the claims alleged herein to obtain full

compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs

also have no interests that are in conflict with or antagonistic to the interests of class and subclass

members. Plaintiffs have retained highly competent and experienced class action attorneys to

represent their interests and that of the classes and subclass. By prevailing on their own claims,

Plaintiffs will establish Defendants' liability to all class and subclass members. Plaintiffs and

their counsel have the necessary financial resources to adequately and vigorously litigate this

class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class

and subclass members and are determined to diligently discharge those duties by vigorously

seeking the maximum possible recovery for class members.

187.    Superiority: There is no plain, speedy, or adequate remedy other than by

maintenance of this class action. The prosecution of individual remedies by members of the

classes and subclass will tend to establish inconsistent standards of conduct for the Defendants

and result in the impairment of class members' rights and the disposition of their interests

through actions to which they were not parties. Class action treatment will permit a large number

of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the unnecessary duplication of effort and expense that numerous

individual actions world engender. Furthermore, as the damages suffered by each individual

member of the class may be relatively small, the expenses and burden of individual litigation

would make it difficult or impossible for individual members of the class to redress the wrongs

done to them, while an important public interest will be served by addressing the matter as a

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1
2
3

class action. In addition, Defendants acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

4
5

188.    Plaintiffs are unaware of difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

6

## CAUSES OF ACTION

7
8
9
10
11
12
13
14

189.    Plaintiffs do not plead, and hereby disclaim, causes of action under the Food Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder by the FDA, and the Federal Trade Commission and regulations promulgated thereunder. If failure to do so would cause any of his claims to be preempted, Plaintiffs also disclaim causes of action under the Tariff Act and regulations promulgated by the USDA, IOC and/or CBP. Plaintiffs rely on these regulations only to the extent such laws and regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

15
16
17
18

190.    While Defendants' misconduct and the resulting injuries/damages to Plaintiffs and those similarly situated have occurred on a daily basis for many years, Plaintiffs did not discover and, in the exercise of reasonable diligence, could not have discovered the facts giving rise to their claims until a date within one year of the filing of this action.

19
20
21

## FIRST CAUSE OF ACTION
### (Fraud, Deceit, Fraudulent Nondisclosure, and/or Concealment)
### Asserted by Plaintiffs, on Behalf of Themselves and the Proposed Classes

22
23

191.    Plaintiffs reallege and incorporate by reference the previous paragraphs of this Class Action Complaint as if set forth herein.

24
25
26
27

192.    Every day for at least the past several years, Defendants presented millions of consumers throughout the United States with deceptive marketing by conjoining the following elements on the fronts of the packages for the Products: (a) the name "Cascadian Farm" in large font; (b) against a picture of a farm with the Cascade Range in the background; (c) with the

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

phrase(s) (i) "VISIT OUR HOME FARM" and (in bold font) "SKAGIT VALLEY, WA"  or

(ii) "FOUNDED IN SKAGIT VALLEY, WA;" and (d) the phrase "SINCE 1972." Defendants

thereby represent, imply, and suggest that (a) a farm in Skagit Valley is the source of the

ingredients in the Products and/or of a significant fraction of the ingredients of the Products

generally; (b) the primary purpose of the "Home Farm" in Skagit Valley is to provide produce as

a source for the Products; (c) the "Home Farm" in Skagit Valley has a substantial role in the

origin of Defendants' Products; and (d) the Products come from a farming and food production

business that continues to have a substantial connection to the Skagit Valley and that has

continued in operation for decades without being sold to and effectively replaced by a huge

corporation. Defendants frequently supplemented the fraudulent marketing on the face of the

Products' packages with additional images of the farm and/or of the Cascades region, references

to the "Home Farm" and its founding, operation, and location (using the terms "we" and "our"),

additional references to "Skagit Valley" and Washington, and phrases such as "From Our

Foothills to Your Favorite Dishes."

193.    Defendants knew and intended that the foregoing marketing would mislead

reasonable consumers, including Plaintiffs, to believe that Defendants' Products were grown in

whole or in substantial part on a farm in Skagit Valley in the Cascades, that the owner of the

Cascadian Farm brand operates a "Home Farm" in Skagit Valley that has a substantial role in the

origin of Defendants' Products, and that the Products come from a farming and food production

business that has continued in operation for decades without being sold to and effectively

replaced by a huge corporation. Those beliefs were material to the purchasing decisions of

Plaintiffs and those similarly situated, and Defendants knew, at all relevant times, those beliefs

were material to consumers' purchasing decisions.

194.    Given that Defendants (a) actively and intentionally created mistaken beliefs

about material facts through their marketing, (b) knew that consumers were choosing to purchase

the Products based on those mistaken beliefs about facts material to the purchases, and (c) had

superior knowledge of material facts that rendered the purchases unfair absent adequate

disclosures, Defendants had a duty to disclose, adequately and prominently, that the Products were not grown on a farm in Skagit Valley in the Cascades, none of or hardly any of the ingredients in Defendants' Products were grown in Washington or near the Cascades, that the owner of the Cascadian Farm business is a huge multinational agrobusiness corporation, and that Defendants' "Home Farm" in Skagit Valley has no significant role in the production of Defendants' Products.

195.    Defendants violated that duty by failing to adequately inform Plaintiffs, and those similarly situated, that the Products were not grown on a farm in Skagit Valley in the Cascades, that none or hardly any of the ingredients in Defendants' Products were grown in Washington or near the Cascades, that the owner of the Cascadian Farm business is a huge multinational agrobusiness corporation, and/or that Defendants' "Home Farm" in Skagit Valley is essentially a small ice cream shop and a marketing ploy that has no significant role in the production of Defendants' Products.

196.    Plaintiffs and those similarly situated encountered Defendants' misrepresentations, misleading marketing, and actionable omissions, nondisclosures, and concealments at many times and places, including each time they purchased Defendants' Products in grocery stores or through services such as FreshDirect or Amazon, as alleged above. These misrepresentations and actionable omissions, nondisclosures, and concealments were material at the times they were made (or, in the case of omissions and nondisclosures, at the times when they should have been made). They concerned material facts that were essential to the analysis undertaken and/or the prices paid by Plaintiffs, and those similarly situated, in purchasing Defendants' Products.

197.    As a result of Defendants' misrepresentations, misleading marketing, and actionable omissions, nondisclosures, and concealments, Plaintiffs and those similarly situated believed at the time they purchased the Products that Defendants' Products were grown in whole or in substantial part on a farm in Skagit Valley in the Cascades, that the owner of the Cascadian Farm brand operates a "Home Farm" in Skagit Valley that has a substantial role in the origin of

1    Defendants' Products, and that the Products come from a farming and food production business

2    that has continued in operation for decades without being sold to and effectively replaced by a

3    huge corporation.

4        198.    Reasonable consumers, including Plaintiffs, could not have discovered the truth

5    about Defendants' misrepresentations and actionable omissions, nondisclosures, and

6    concealments through reasonable inquiry or inspection at the time of purchase. Plaintiffs and

7    those similarly situated justifiably relied on the marketing at issue and on the absence of

8    adequate disclosures to the contrary.

9        199.    Defendants knew that the information provided to and withheld from Plaintiffs

10   and members of the Proposed Classes would guide or influence them in their purchasing

11   decisions and would result in an inflated price for the Products. Defendants intended Plaintiffs

12   and those similarly situated to form incorrect beliefs, as set forth above, as a result of the above-

13   described misrepresentations, misleading marketing, omissions, nondisclosures, and

14   concealments. Defendants intended Plaintiffs and those similarly situated to rely on those

15   incorrect beliefs when deciding whether to purchase the Cascadian Farm Products. By and

16   through such fraud, deceit, misrepresentations, omissions, nondisclosure, and/or concealment,

17   Defendants intended to induce Plaintiffs and those similarly situated to alter their position to

18   their detriment, including, without limitation, by paying a premium to purchase the Products or

19   by causing them to purchase the Products when they otherwise would have chosen not to

20   purchase them, absent Defendants' fraudulent conduct.

21       200.    Plaintiffs and those similarly situated relied to their detriment on Defendants'

22   misrepresentations and omissions. Had Plaintiffs and those similarly situated been adequately

23   informed and not misled and deceived by Defendants, they would have acted differently by,

24   without limitation, paying less for or not purchasing Defendants' Products.

25       201.    As a direct and proximate result of Defendants' misrepresentations and omissions,

26   Plaintiffs and those similarly situated have suffered damages. In particular, Plaintiffs seek to

27   recover on behalf of themselves and those similarly situated the price premium paid for the

Products, *i.e.*, the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentations or omissions. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

202.    Defendants' conduct as described herein was willful and malicious and was designed to and actually did unlawfully, fraudulently, and inequitably increase Defendants' profits, even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
### Asserted by Plaintiffs, on Behalf of Themselves and the Proposed Classes

203.    Plaintiffs reallege and incorporate by reference the previous paragraphs of this Class Action Complaint as if set forth herein.

204.    Every day for at least the past several years, Defendants presented millions of consumers throughout the United States with misleading marketing by conjoining the following elements on the fronts of the packages for the Products: (a) the name "Cascadian Farm" in large font; (b) against a picture of a farm with the Cascade Range in the background; (c) with the phrase(s) (i) "VISIT OUR HOME FARM" and (in bold font) "SKAGIT VALLEY, WA"  or (ii) "FOUNDED IN SKAGIT VALLEY, WA;" and (d) the phrase "SINCE 1972." Defendants thereby represent, imply, and suggest that (a) a farm in Skagit Valley is the source of the ingredients in the Products and/or of a significant fraction of the ingredients of the Products generally; (b) the primary purpose of the "Home Farm" in Skagit Valley is to provide produce as a source for the Products; (c) the "Home Farm" in Skagit Valley has a substantial role in the origin of Defendants' Products; and (d) the Products come from a farming and food production business that continues to have a substantial connection to the Skagit Valley and that has continued in operation for decades without being sold to and effectively replaced by a huge corporation. Defendants frequently supplemented the misleading marketing on the face of the

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

Products' packages with additional images of the farm and/or of the Cascades region, references to the "Home Farm" and its founding, operation, and location (using the terms "we" and "our"), additional references to "Skagit Valley" and Washington, and phrases such as "From Our Foothills to Your Favorite Dishes."

205.    Defendants had a duty to disclose, adequately and prominently, that the Products were not grown on a farm in Skagit Valley in the Cascades, none of or hardly any of the ingredients in Defendants' Products were grown in Washington or near the Cascades, that the owner of the Cascadian Farm business is a huge multinational agrobusiness corporation, and that Defendants' "Home Farm" in Skagit Valley has no significant role in the production of Defendants' Products.

206.    Defendants violated that duty by failing to adequately inform Plaintiffs, and those similarly situated, that the Products were not grown on a farm in Skagit Valley in the Cascades, that none or hardly any of the ingredients in Defendants' Products were grown in Washington or near the Cascades, that the owner of the Cascadian Farm business is a huge multinational agrobusiness corporation, and/or that Defendants' "Home Farm" in Skagit Valley is essentially a small ice cream shop and a marketing ploy that has no significant role in the production of Defendants' Products.

207.    Plaintiffs and those similarly situated encountered Defendants' negligent misrepresentations, marketing, omissions, and nondisclosures at many times and places, including each time they purchased Defendants' Products in grocery stores or through services such as FreshDirect or Amazon, as alleged above. These misrepresentations, marketing, omissions, and nondisclosures were material at the times they were made (or, in the case of omissions and nondisclosures, at the times when they should have been made) and Defendants knew or should have known, at all relevant times, the misrepresentations, marketing, omissions, and nondisclosures were material to consumers' purchasing decisions. They concerned material facts that were essential to the analysis undertaken and/or the prices paid by Plaintiffs, and those similarly situated, in purchasing Defendants' Products.

208.    As a result of Defendants' negligent misrepresentations, marketing, omissions, and nondisclosures, Plaintiffs and those similarly situated believed at the time they purchased the Products that Defendants' Products were grown in whole or in substantial part on a farm in Skagit Valley in the Cascades, that the owner of the Cascadian Farm brand operates a "Home Farm" in Skagit Valley that has a substantial role in the origin of Defendants' Products, and that the Products come from a farming and food production business that has continued in operation for decades without being sold to and effectively replaced by a huge corporation. Those beliefs were material to the purchasing decisions of Plaintiffs and those similarly situated. Defendants knew or should have known, at all relevant times, that their misrepresentations, marketing, omissions, and nondisclosures would induce those beliefs and that those beliefs would be and were material to consumers' purchasing decisions.

209.    Reasonable consumers, including Plaintiffs, could not have discovered the truth about Defendants' misrepresentations, misleading marketing, omissions, and nondisclosures through reasonable inquiry or inspection at the time of purchase. Plaintiffs and those similarly situated justifiably relied on the marketing at issue and on the absence of adequate disclosures to the contrary. Defendants knew or should have known, at all relevant times, that reasonable consumers would rely on the marketing at issue and on the absence of adequate disclosures to the contrary and that the information provided to and withheld from Plaintiffs and members of the Proposed Classes would guide or influence them in their purchasing decisions and would result in an inflated price for the Products.

210.    Defendants' negligent misrepresentations, marketing, omissions, and nondisclosure caused Plaintiffs and those similarly situated to alter their position to their detriment, including, without limitation, by paying a premium to purchase the Products or by causing them to purchase the Products when they otherwise would have chosen not to purchase them, absent Defendants' negligent conduct.

211.    Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and omissions. Had Plaintiffs and those similarly situated been adequately

1   informed and not misled and deceived by Defendants, they would have acted differently by,

2   without limitation, paying less for or not purchasing Defendants' Products.

3       212.   As a direct and proximate result of Defendants' negligence, Plaintiffs and those

4   similarly situated have suffered damages. In particular, Plaintiffs seek to recover on behalf of

5   themselves and those similarly situated the price premium paid for the Products, *i.e.*, the

6   difference between the price consumers paid for the Products and the price that they would have

7   paid but for Defendant's negligence. This premium can be determined by using econometric or

8   statistical techniques such as hedonic regression or conjoint analysis.

9

10                            **THIRD CAUSE OF ACTION**
        **(Violations of the WCPA, and Similar Laws Throughout the United States, by False**
11      **Advertising and Deceptive, Misleading, Unfair, and/or Unlawful Practices)**
        **Asserted by Plaintiffs on Behalf of Themselves, the Proposed Classes, and the**
12                              **General Public**

13      213.   Plaintiffs reallege and incorporate by reference the previous paragraphs of this

14   Class Action Complaint as if set forth herein.

15      214.   For years preceding the filing of this Class Action Complaint, and at all times

16   mentioned herein and relevant to the Plaintiffs and the Proposed Classes, Defendants have

17   engaged, and continue to engage, in false advertising and unfair, unlawful and deceptive trade

18   practices by engaging in the conduct outlined in this Class Action Complaint. In particular,

19   Defendants have engaged, and continue to engage, in false advertising and unfair, unlawful and

20   deceptive trade practices by, without limitation, the following (referred to, collectively, herein as

21   "wrongful conduct"):

22          a.      deceptively, misleadingly, and unfairly representing and indicating to

23   Plaintiffs, and those similarly situated, that: (i) the Products contained ingredients that

24   were grown on a farm in Skagit Valley in the Cascades; (ii) a substantial fraction of the

25   ingredients generally included in Defendants' Products were grown in Washington and

26   near the Cascades; (iii) the primary purpose of the "Home Farm" in Skagit Valley is to

27   provide produce as a source for the Products; (iv) the "Home Farm" in Skagit Valley has

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

a substantial role in the origin of Defendants' Products; and (v) the Products come from a farming and food production business that has continued in operation for decades without being sold to and effectively replaced by a huge corporation;

b.      failing to adequately inform Plaintiffs, and those similarly situated, that the Products were not grown on a farm in Skagit Valley in the Cascades, that none or hardly any of the ingredients in Defendants' Products were grown in Washington or near the Cascades, that the owner of the Cascadian Farm business is a huge multinational agrobusiness corporation, the actual sources of the Products, and/or that Defendants "Home Farm" in Skagit Valley is essentially a marketing ploy that has no significant role in the production of Defendants' Products;

c.      violating state and federal statutes and regulations, including but not limited to Wash. Rev. Code § 15.04.410; 7 U.S.C. §§ 1638, 1638a; 7 C.F.R. § 65.400; 19 U.S.C. § 1304; 19 C.F.R. § 134.46; 21 U.S.C. § 343(a); 21 C.F.R. § 101.5; and 21 C.F.R. § 101.18(c); Cal. Health & Saf. Code §§ 110100(a), 110380, 110505, 110660; N.J. Stat. Ann. § 24:5-17(a); N.J. Admin. Code tit. 8 §8:21-1.3; N.Y. Agric. & Mkts. Law § 201(1); N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1; and other state or federal laws or regulations that, if violated by Defendants' conduct as alleged herein, give rise to liability under Washington's Consumer Protection Act ("CPA") (Wash. Rev. Code § 19.86.010 *et seq.*) or other applicable state statutes (*see, e.g.*, paragraph 228, *infra*); and

d.      engaging in fraud, deceit, misrepresentation, and other unfair, deceptive, misleading, confusing, and/or inequitable conduct and practices as described herein.

215.   Defendants' wrongful conduct concerning the Products had a capacity and tendency to deceive, mislead, and/or confuse reasonable consumers, was likely to deceive, mislead, and/or confuse reasonable consumers, and did deceive, mislead, and/or confuse reasonable consumers, including a substantial portion of, if not most of, the millions of consumers who viewed and continue to view Defendants' Products and the marketing concerning the Products. Such consumers were led to believe, incorrectly, that the Products

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

contained ingredients that were grown on a farm in Skagit Valley in the Cascades, that a substantial fraction of the ingredients in Defendants' Products were grown in Washington or near the Cascades, that Defendants operate a "Home Farm" in Skagit Valley that has a substantial role in the production of Defendants' Products, that the primary purpose of the "Home Farm" is to provide source produce for the Products, and that the Products come from a farming and food production business that has continued in operation for decades without being sold to and effectively replaced by a huge corporation.

216. Defendants intended, knew, and/or should have known of the deceptive, misleading, confusing, unlawful, unfair, and/or inequitable character of their wrongful conduct, and that their wrongful conduct would cause consumers to purchase the Products and pay a price premium for the Products, which the consumers otherwise would not have done absent Defendants' wrongful conduct.

217. Defendants' statements and advertising concern transactions that are or were intended to result, or which have resulted, in the sale of goods to consumers, and were made with the intent to dispose of the Products and to induce the public to enter into purchases of Defendants' Products.

218. By engaging in such wrongful conduct, Defendants have violated, and Plaintiffs and the Proposed Classes are entitled to relief under, the Washington CPA.

219. Consistent with and/or in addition to the other allegations herein, Defendants' wrongful conduct constitutes *per se* violations of RCW 19.86.020, pursuant to RCW 15.04.410, which provides that agricultural commodities not grown in Washington "shall not be advertised, labeled, described, sold, marked, or otherwise held out as 'Washington state grown,' or in any way as to imply that such product is a Washington state grown or raised agricultural commodity."

220. Defendants' wrongful conduct affected and continues to affect the public interest because it includes a consistent pattern of repeated and ongoing conduct affecting many products

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

63

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1  and consumers and Defendants' wrongful conduct was and is likely to deceive the general

2  public.

3    221.    Defendants used their wrongful conduct to their significant financial gain. Such

4  wrongful conduct also constitutes unlawful competition and provides an unlawful advantage

5  over Defendants' competitors as well as injury to the general public.

6    222.    Plaintiffs and those similarly situated encountered Defendants' wrongful conduct

7  at many times and places, including each time they purchased Defendants' Products in grocery

8  stores or through services such as FreshDirect or Amazon, as alleged above. Defendants'

9  misrepresentations, marketing, omissions, and nondisclosures were material at the times they

10  were made (or, in the case of omissions and nondisclosures, at the times when they should have

11  been made) and Defendants knew or should have known, at all relevant times, the

12  misrepresentations, marketing, omissions, and nondisclosures were material to consumers'

13  purchasing decisions. They concerned material facts that were essential to the analysis

14  undertaken and/or the prices paid by Plaintiffs, and those similarly situated, in purchasing

15  Defendants' Products.

16    223.    As a result of Defendants' wrongful conduct, Plaintiffs and those similarly

17  situated believed at the time they purchased the Products that Defendants' Products were grown

18  in whole or in substantial part on a farm in Skagit Valley in the Cascades, that the owner of the

19  Cascadian Farm brand operates a "Home Farm" in Skagit Valley that has a substantial role in the

20  origin of Defendants' Products, and that the Products come from a farming and food production

21  business that has continued in operation for decades without being sold to and effectively

22  replaced by a huge corporation. Those beliefs were material to the purchasing decisions of

23  Plaintiffs and those similarly situated. Defendants knew or should have known, at all relevant

24  times, that their wrongful conduct would induce those beliefs and that those beliefs would be and

25  were material to consumers' purchasing decisions.

26    224.    Defendants could not have charged, and Plaintiffs would not have paid, an

27  ascertainable premium for the Products but for Defendants' wrongful conduct. Defendants are

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

able to charge a premium for the Products as compared to similar produce because consumers are led to believe (a) the Products are from a farm in the Cascades, and not sourced from various industrial farms elsewhere in the United States and the world; (b) Cascadian Farm branded Products have a substantial connection to the "Home Farm" (whose purpose is as a source for the Products) or a farm or farms in or near the Cascades; and/or (c) that the Products come from a farming and food production business that has continued in operation for decades without being sold to and effectively replaced by a huge corporation.

225.    Plaintiffs and those similarly situated relied to their detriment on Defendants' wrongful conduct. Had Plaintiffs and those similarly situated been adequately informed, and not deceived, misled, or confused, by Defendants concerning the origins and sources of the Products, the true global and industrial production of the Products, that Defendants do not operate a farm in the Skagit Valley with any significant role in growing ingredients for the Products, and that the original owner (and scale) of the Cascadian Farm business has been replaced by a giant corporate enterprise, Plaintiffs and those similarly situated would either have paid less for Defendants' Products or would not have purchased the Products.

226.    As a result of Defendants' wrongful conduct, Defendants have caused and continue to cause actual damage to Plaintiffs and those similarly situated, and, if not enjoined, Defendants will continue to harm them. Plaintiffs and those similarly situated were harmed and suffered losses as a result of Defendants' wrongful conduct.

227.    As a direct and proximate result of such wrongful conduct, Plaintiffs and the other members of the Proposed Classes have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of the misconduct alleged herein, in an amount which will be proven at trial but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and those similarly situated paid a price premium for the Products: the difference between the price consumers actually paid for the Products and the price that they would have paid but for Defendants' wrongful conduct. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1          <u>Laws of Other States and the District of Columbia</u>

2          228.    To the extent it may be determined that similar laws prohibiting false advertising

3    and unlawful, deceptive, and unfair trade practices in other states and/or the District of Columbia

4    may apply to any claims of the Proposed Classes (including nationwide classes and/or any

5    subclasses) or to any particular issues in this lawsuit, Defendants have also violated, and

6    Plaintiffs and the Proposed Classes are entitled to relief under, such laws, including but not

7    limited to:

8              a.    California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et*

9                    *seq.*), California False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et*

10                   *seq.*), and California Legal Remedies Act (Cal. Civil Code § 1750 *et seq.*);

11             b.    District of Columbia Consumer Protection Procedures Act (D.C. Code § 28-

12                   3901 *et seq.*) (including § 28-3904(k) and subsections (a), (d), (e), (f), (f-1),

13                   (h), (s), and (t) of § 28-3904);

14             c.    Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et*

15                   *seq.*) and false advertising statutes (Fla. Stat. §§ 817.41, 817.44);

16             d.    Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill.

17                   Comp. Stat. § 505/1 *et seq.*) and Illinois Uniform Deceptive Trade Practices

18                   Act (815 Ill. Comp. Stat. § 510/1 *et seq.*);

19             e.    Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901 *et seq.*);

20             f.    N.Y. Gen. Bus. Law §§ 349, 350;

21             g.    New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1 *et seq.*)

22             h.    Oregon Unfair Trade Practices Act (Or. Rev. Stat. § 646.605 *et seq.*); and

23             i.    similar laws in all other states.

24                  <u>Remedies</u>

25         229.    Plaintiffs seek, on behalf of themselves, those similarly situated, and the general

26    public, a declaration that the above-described wrongful conduct is fraudulent, deceptive,

27    misleading, confusing, unfair, and/or unlawful.

CLASS ACTION COMPLAINT,                    66              **Gutride Safier LLP**
No. 2:19-cv-00005                                          113 Cherry Street, #55150
                                                          Seattle, WA 98140
                                                          (415) 639-9090 x109

230.     Plaintiffs seek, on behalf of themselves, those similarly situated, and the general public, an injunction (a) prohibiting the sale of the Products within a reasonable time after entry of judgment, unless packaging, marketing, and statements concerning the Products are modified to end Defendants' wrongful conduct, and (b) further prohibiting Defendants from using similarly false, deceptive, misleading, confusing, unfair, and/or unlawful marketing, branding, and labeling regarding the true origins and sources of their products, the nature of the companies in control of their products, and Defendants' relationship to the sources of the food products and to the original owners of the businesses and brands they acquire. Plaintiffs seek such injunctive relief pursuant to RCW 19.86.090, and, if applicable, similar laws, including but not limited to Cal. Bus. & Prof. Code § 17203, Cal. Civil Code § 1780(a)(2), D.C. Code § 28-3905(k), Fla. Stat. § 501.211, 815 Ill. Comp. Stat. § 505/10a, 815 Ill. Comp. Stat. § 510/3, Mich. Comp. Laws § 445.911, N.J. Stat. Ann. §§ 56:8-19, N.Y. Gen. Bus. Law § 349(h), and Or. Rev. Stat. § 646.638.

231.     Unless and until enjoined and restrained by order of this Court, Defendants will continue to engage in such wrongful conduct, and similar wrongful conduct concerning other products, and will continue to cause injury in fact to the general public and the loss of money and property. Absent injunctive relief, the expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled.  Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the CPA and similar laws alleged to have been violated herein

232.     Plaintiffs seek, on behalf of themselves and those similarly situated, an award of their actual damages and/or disgorgement or restitution of benefits wrongfully conferred from Plaintiffs and those similarly situated to Defendants, to restore any and all monies acquired by Defendants from Plaintiffs and those similarly situated, including the price premiums paid or total refunds of the prices paid, as a result of Defendants' wrongful conduct complained of herein, plus interest thereon, pursuant to RCW 19.86.090, and, if applicable, similar laws,

including but not limited to Fla. Stat. §§ 501.211, 817.41, 817.44, 815 Ill. Comp. Stat. § 505/10a,

Mich. Comp. Laws § 445.911, N.J. Stat. Ann. §§ 56:8-2.11, 56:8-2.12, and 56:8-19, N.Y. Gen.

Bus. Law § 349(h), and Or. Rev. Stat. § 646.638.

233.    Plaintiffs seek, on behalf of themselves and those similarly situated, up to three

times the actual damages of Plaintiffs and those similarly situated, pursuant to RCW 19.86.090,

and, if applicable, similar laws, including but not limited to D.C. Code § 28-3905(k), N.J. Stat.

Ann. § 56:8-19, and N.Y. Gen. Bus. Law § 349(h).

234.    Plaintiffs seek, on behalf of themselves and those similarly situated, attorney fees

and costs incurred in connection with this lawsuit, pursuant to RCW 19.86.090, and, if

applicable, similar laws, including but not limited to Cal. Civil Code § 1780(d); D.C. Code § 28-

3905(k); Fla. Stat. §§ 501.211, 817.41, 817.44; 815 Ill. Comp. Stat. § 505/10a; 815 Ill. Comp.

Stat. § 510/3; N.J. Stat. Ann. § 56:8-19; N.Y. Gen. Bus. Law § 349(h); and Or. Rev. Stat.

§ 646.638(3).

235.    To the extent other states' laws apply to any of the claims of Plaintiffs' or

members of the Proposed Classes, or subset(s) thereof, Plaintiffs seek, on behalf of themselves

and those similarly situated, statutory damages provided by such laws, including but not limited

to:

       a.     $1,500 per violation, if that amount is greater than treble damages, pursuant

              to D.C. Code § 28-3905(k)(2)(A);

       b.     $50 per class member if that amount is greater than each member's actual

              damages, pursuant to N.Y. Gen. Bus. Law 349(h); and

       c.     $200 per class member if that amount is greater than each member's actual

              damages, pursuant to Or. Rev. Stat. § 646.638(1) and § 646.638(8)(a),

              because Defendants acted recklessly or knowingly with respect to their

              unlawful acts under Or. Rev. Stat. § 646.608.

236.    Plaintiffs seek, on behalf of themselves and those similarly situated, punitive

damages, pursuant to Cal. Civ. Code § 1780(a)(4), D.C. Code § 28-3905(k)(2)(C), Fla. Stat.

CLASS ACTION COMPLAINT,      68        Gutride Safier LLP
No. 2:19-cv-00005                             113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

§§ 817.41, 817.44, 815 Ill. Comp. Stat. § 505/10a, Or. Rev. Stat. § 646.638(8)(b) and similar laws.

237.    PRESUIT NOTICE.  Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiffs specifically disclaim, at this time, requests for relief under statutes that require presuit notice prior to filing claims for relief, including but not limited to any request for damages under any provision of the CLRA. Plaintiffs, however, hereby provides Defendants with notice and demand (pursuant to potentially applicable statutes, including but not limited to California Civil Code § 1782) that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false, confusing, and/or deceptive practices complained of herein.  Defendants' failure to do so will result in Plaintiffs amending this Class Action Complaint to seek, on behalf of themselves, those similarly situated class members, and the general public, the relief herein disclaimed, including but not limited to compensatory damages, punitive damages and/or restitution of any ill-gotten gains due to Defendants' acts and practices pursuant to California Civil Code § 1780(a).

### PLAINTIFFS' FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**
**Asserted by Plaintiffs on Behalf of Themselves and the Proposed Classes**

238.    Plaintiffs reallege and incorporate by reference the previous paragraphs of this Class Action Complaint as if set forth herein.

239.    Plaintiffs and those similarly situated conferred benefits on the Defendants by paying for the Products, including a price premium for the Products, *i.e.*, the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's inequitable conduct alleged herein, which misled Plaintiffs and those similarly situated regarding the true origins of the Products and/or regarding the significance and relationship of Skagit Valley to the Products.

240.    Defendants engaged in these unjust practices to increase their profits to the detriment of Plaintiffs and those similarly situated.

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

69

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

241.    It would be unjust and inequitable for Defendants to retain the benefits of their misconduct as alleged herein, because, among other things, Defendants misled Plaintiffs and those similarly situated regarding the true origins of the Products and/or regarding the significance and relationship of Skagit Valley to the Products, Defendants knew or should have known that they had misled their customers, and Defendants knowingly or negligently accepted the price premiums paid by Plaintiffs and those similarly situated.

242.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and those similarly situated is unjust and inequitable, Defendant must disgorge such benefits and pay restitution to Plaintiffs and the class members for their unjust enrichment, as ordered by the Court.

243.    Plaintiffs seek, on behalf of themselves and those similarly situated, full disgorgement of Defendants' revenues or profits from their wrongful conduct and/or full restitution of the price premium paid by Plaintiffs and members of the Proposed Classes, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.      On Cause of Action Number 1 against Defendants and in favor of Plaintiffs and the other members of the Proposed Classes:

1.      an award of compensatory damages, in the amount of the price premium paid, *i.e.*, the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation, in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis; and

2.      an award of punitive damages, the amount of which is to be determined at trial.

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

70

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1      B.     On Cause of Action Number 2 against Defendants and in favor of Plaintiffs and

2          the other members of the Proposed Classes:

3          1.     an award of compensatory damages, in the amount of the price premium

4          paid, *i.e.*, the difference between the price consumers paid for the Products

5          and the price that they would have paid but for Defendant's

6          misrepresentation, in an amount to be proven at trial using econometric or

7          statistical techniques such as hedonic regression or conjoint analysis.

8      C.     On Cause of Action Number 3 against Defendants and in favor of Plaintiffs,

9          members of the Proposed Classes, and the general public:

10          1.     an award of damages equivalent to the price premiums paid for the

11          Products (*i.e.*, the difference between the price consumers paid for the

12          Products and the price that they would have paid but for Defendants'

13          deceptive, misleading, confusing, unfair, and unlawful conduct, in an

14          amount to be proven at trial using econometric or statistical techniques

15          such as hedonic regression or conjoint analysis), or disgorgement or

16          restitution of such wrongfully obtained premiums and any other benefits

17          Defendants have obtained from sales of the Products;

18          2.     an award up to three times the actual damages of Plaintiffs and those

19          similarly situated, pursuant to RCW 19.86.090 and similar laws;

20          3.     statutory damages consisting of: (a) $1,500 per violation, if that amount is

21          greater than treble damages, pursuant to D.C. Code § 28-3905(k)(2)(A);

22          (b) $50 per class member if that amount is greater than each member's

23          actual damages, pursuant to N.Y. Gen. Bus. Law 349(h); and/or (c) $200

24          per class member if that amount is greater than each member's actual

25          damages, pursuant to Or. Rev. Stat. § 646.638(1) and § 646.638(8)(a);

26          4.     punitive damages;

27          5.     injunctive relief:

CLASS ACTION COMPLAINT,      71      **Gutride Safier LLP**
No. 2:19-cv-00005          113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1          a.    enjoining Defendants from selling the Products within a reasonable

2                time after entry of judgment, unless and until the packaging,

3                marketing, and statements concerning the Products are modified to

4                end Defendants' deceptive, misleading, confusing, unfair, and

5                unlawful practices;

6          b.    enjoining Defendants, directly or through any corporation,

7                partnership, subsidiary, division, trade name, or other device, in

8                connection with the manufacturing, labeling, packaging, advertising,

9                promotion, offering for sale, sale, or distribution of any food

10             product, from using similarly deceptive, misleading, confusing,

11             unfair, or unlawful representations, marketing, branding, and

12             labeling regarding the true origins and sources of their products, the

13             nature of the companies in control of their products, and Defendants'

14             relationship to the sources of the food products and to the original

15             owners of the businesses and brands they acquire; and

16          c.    enjoining Defendants, directly or through any corporation,

17             partnership, subsidiary, division, or other device, in connection with

18             the manufacturing, labeling, packaging, advertising, promotion,

19             offering for sale, sale, or distribution of any food product to not

20             provide to others the means and instrumentalities with which to

21             make any representation, marketing, or practice prohibited by the

22             above (where, for the purposes of this paragraph, "means and

23             instrumentalities" means any information, including, but not

24             necessarily limited to, any advertising, labeling, or promotional,

25             sales training, or purported substantiation materials, for use by trade

26             customers in their marketing of such product or service); and

27

CLASS ACTION COMPLAINT,        72
No. 2:19-cv-00005

6.      an award of attorney fees and costs incurred in connection with this

lawsuit.

D.      On Causes of Action Number 4 against Defendants and in favor of Plaintiffs and

the other members of the Proposed Classes:

1.      disgorgement or restitution of the benefits Defendants have obtained from

sales of the Products, including but not limited to the price premium paid,

*i.e.*, the difference between the price consumers paid for the Products and

the price that they would have paid but for Defendant's misconduct, in an

amount to be proven at trial using econometric or statistical techniques

such as hedonic regression or conjoint analysis.

E.      On all causes of action against Defendants and in favor of Plaintiffs, class

members and the general public:

1.      for costs of suit incurred; and

2.      for such further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury.

Dated: January 2, 2019                Respectfully submitted,

**GUTRIDE SAFIER LLP**

By: */s/Stephen M. Raab/*

Stephen M. Raab, Esq., WSBA No. 53004
stephen@gutridesafier.com
113 Cherry Street, #55150
Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT,
No. 2:19-cv-00005

73

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



Mango Strawberry Blend
32 oz



Cherry Berry Blend
32 oz



Harvest Berries
32 oz and 10 oz



Mango Chunks
10 oz



Blackberries
10 oz



Raspberries
8 oz



Blueberries
8 oz and 28 oz



Strawberries
10 oz and 32 oz



Sliced Peaches
10 oz

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



Cut Spinach
10 oz



Riced Cauliflower
12 oz



Beets
10 oz



Kale
10 oz



Multi-Colored Carrots
10 oz



Broccoli Florets
10 oz



Swiss Chard
10 oz



Broccoli Cuts
16 oz




Cut Green Beans
10 oz and 16 oz



Shelled Edamame
10 oz



Edamame
10 oz



Sweet Peas
10 oz

CLASS ACTION COMPLAINT - EX. A          2



Garden Peas
16 oz



Sweet Corn
10 oz and 16 oz



Peas & Carrots
10 oz



Mixed Vegetables
16 oz



Riced Cauliflower Blend with Bell
Peppers & Onions



Riced Cauliflower with Roasted
Sweet Potatoes & Kale



Riced Cauliflower Blend with Stir-
Fry Vegetables



Mirepoix
10 oz



Chinese-Style Stirfry Blend
10 oz



California-Style Blend
10 oz



Gardener's Blend
10 oz



Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



Root Vegetable Hashbrowns
12 oz.



Fire Roasted Sweet Potatoes
16 oz



Spud Puppies™
16 oz



Hash Browns
16 oz



Wedge Cut Oven Fries
16 oz




Crinkle Cut French Fries
16 oz



Straight Cut French Fries
16 oz



Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



Lemon Blueberry Granola

11.5 oz



Strawberry Granola

10.5 oz



Oats & Honey Granola

17 oz



Ancient Grains Granola

12.5 oz



Cinnamon Raisin Granola

17 oz



Dark Chocolate Almond Granola

13.25 oz



French Vanilla Almond Granola

13 oz



Fruit & Nut Granola

13.5 oz



Maple Brown Sugar Granola

17 oz



Vanilla Chia Crunch

12.5 oz



Gluten Free Berry Vanilla Puffs

10.25



Cinnamon Crunch

9.2 oz and 1lb

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



**Honey Oat Crunch**
13.5 oz and 1lb, 3 oz



Buzz Crunch Honey Almond
Cereal



**Graham Crunch**
9.6 oz



Fruitful O's™
11 oz



**Hearty Morning®**
15 oz



**Honey Nut O's**
10.4 oz



Multi Grain Squares
13 0z



Purely O's®
9 oz.



Raisin Bran
12 oz

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



Sweet & Salty Mixed Nut
6.2 oz



Sweet & Salty Peanut with Puffed
Rice & Quinoa



Sweet & Salty Peanut Pretzel
5 bars



Peanut Butter Chocolate Chip
6.24 oz



Chocolate Chip
6 bars and 10 bars



Harvest Berry
7.4 oz



Oatmeal Raisin
6.24 oz



Vanilla Chip
6 bars and 10 bars



Oats And Honey
7.1 oz



Peanut Butter
7.1 oz



Peanut Butter Chocolate Chip
8.85 oz



Honey Roasted Nut
8.85 oz



Wild Blueberry
7.44 oz

Oats & Chocolate
7.44 oz



Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109



Concord Grape
10 oz



Raspberry
10 oz



Strawberry
10 oz

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

DocuSign Envelope ID: 0848F676-EE35-4B14-ACB3-917F1E3FE9E0

## DECLARATION PURSUANT TO CAL. CIV. CODE § 1780(d)

I, Heather Carson, declare:

I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

I submit this Declaration pursuant to California Civil Code § 1780(d), California Code of Civil Procedure section § 2015.5, and 28 U.S.C. § 1746.

I have reviewed records showing Defendant Small Planet Foods, Inc. is incorporated in Washington and has a registered agent at 711 Capitol Way S, Suite 204, Olympia, WA, 98501.

I have reviewed images of packaging of Cascadian Farm products, on the General Mills website, which identify the location of Small Planet Foods, Inc. as Sedro-Woolley, WA 98284. *See* https://www.generalmills.com/en/Brands/organic-natural/cascadian-farm/brand-product-list.

I have viewed a job posting on a General Mills website stating that General Mills acquired Cascadian Farm in 2000 and that Cascadian Farm is seeking to hire for a position in Rockport, WA. *See* https://careers.generalmills.com/job/8849989/field-supervisor-cascadian-home-farm-rockport-wa/.

Based on the foregoing, I believe Defendants Small Planet Foods, Inc. and General Mills, Inc. are doing business in the Western District of Washington.

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct.

Executed on   12/29/2018

DocuSigned by:

D004D5855DA9473...

Heather Carson

CLASS ACTION COMPLAINT – EX. B                1                **Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109