UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCH REED, *et al.*, | CASE NO. C19-0005-JCC |
| Plaintiffs, | ORDER |
| v. | |
| GENERAL MILLS, INC., *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 15) and motion to stay discovery (Dkt. No. 33). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motions for the reasons explained herein.

## I. BACKGROUND

This is a putative class action where Plaintiffs are consumers from across the nation who purchased certain Cascadian Farms products (the "Products") from a variety of retailers. (Dkt. No. 1.) Plaintiffs allege that Defendants marketed and sold the Products in a fashion that caused Plaintiffs to believe that the Products were produced on a farm in Washington, when in fact they

were not.[1] (*Id.*) If not for this incorrect belief, Plaintiffs allege that they either would not have purchased, or paid for less for, Defendants' Products. (*Id.*)

Plaintiffs allege that 92 different Products are deceptive.[2] (*Id.* at 7–10.) The Products' allegedly deceptive packaging includes the brand name "Cascadian Farm," a Skagit Valley emblem, and a picturesque, rural background. (*See id.* at 12–13.) Defendants allege that most of the Products' packaging contains appropriate disclaimers or disclosures—either indicating that the Products have outgrown their home farm in Washington or indicating the Products' true origin. (*See* Dkt. No. 15 at 26–27.) The following is an example of one of the Product's packaging:



---

[1] Although Cascadian Farms was initially an independent company, in 2000, it merged with Defendant Small Planet Foods, Inc. (Dkt. No. 1 at 21.) Around the same time or shortly thereafter, Defendant General Mills acquired Defendant Small Planet Foods. (*Id.*)

[2] The complaint references 92 different Products, but the parties appear to agree that only 81 Products are properly alleged. (*See* Dkt. No. 15 at 10, 22 at 23.) The order treats the complaint as alleging that there are 81 deceptive Products.

Plaintiffs bring claims for fraud, negligent misrepresentation, violations of Washington's Consumer Protection Act and "Similar Laws Throughout the United States," and unjust enrichment. (Dkt. No. 1 at 54–69.) Defendants move to dismiss all of Plaintiffs' claims for failure to state a claim, on the basis that no reasonable consumer would be deceived by the Products' packaging. (Dkt. No. 15.)

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 12(b)(6)

The Court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Judicial Notice

Defendants ask the Court to take judicial notice of the following documents: (1) the full packaging for the Products ("Exhibit A"); (2) the packaging for Mountain Peak Organic Blueberries ("Exhibit B"); (3) screen captures from Cascadian Farm's Instagram and Twitter accounts, captured on February 26, 2019 ("Exhibit C"); (4) a chart that splits up each named Plaintiff and includes Products purchased, the Products' ingredients, and the language on the Products' packaging about the "Home Farm" ("Exhibit D"); (5) a chart of all Products, the

Products' ingredients, and language on the Products' packaging about the "Home Farm" ("Exhibit E"); (6) the trademark registration certificate for Cascadian Farm ("Exhibit F"); (7) the trademark registration certificate for Cascadian Farm Organic ("Exhibit G"); (8) screen captures from General Mills's and Cascadian Farm's websites, during the time when Plaintiffs allege they purchased the Products ("Exhibit H"); (9) screen captures from Cascadian Farm's Facebook, Instagram, and Twitter accounts, captured on February 26, 2019 ("Exhibit I"); (10) two documents downloaded from the Washington State Department of Agriculture's "Agriculture in Washington" sub-page, downloaded on February 26, 2019 ("Exhibit J"); (11) a list of data downloaded from the United States Department of Agriculture's 2012 Census webpage, downloaded on February 26, 2019 ("Exhibit K"); and (12) the full packaging of imported Products ("Exhibit L").

Generally, the Court may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions to this rule. First, incorporation-by-reference allows the Court to treat certain documents as though they are part of the complaint itself. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* In sum, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Second, the Court is permitted to take judicial notice of facts that are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.

Evid. 201(b).

### 1. Exhibits A, D, E, and L

Defendants argue that judicial notice of Exhibits A, D, E, and L is appropriate because Plaintiffs mention these Products in their complaint; therefore, the Court should be privy to the entire packaging (and entire ingredient list), and not just the portions supportive of Plaintiffs' argument. (Dkt. No. 16 at 4–7.) Plaintiffs argue that judicial notice is inappropriate here because Defendants have not authenticated that these specific packages were used during the relevant class period and because factual disputes remain surrounding what disclosures appeared on the labels at the time of Plaintiffs' purchases. (Dkt. No. 22 at 24–25.) The Court's review of such evidence at this stage is inappropriate—it is a way for Defendants to insert helpful facts into the record without Plaintiffs' approval of the authenticity of the packaging. *See Khoja*, 899 F.3d at 1002. And even if the Court were to conclude that Exhibits A, D, E, and L are subject to judicial notice, the exhibits would not give rise to proper grounds for dismissal, as discussed below. *See infra* Section II.C.3. Because the authenticity of Exhibits A, D, E, and L is reasonably questioned by Plaintiffs, the Court DENIES Defendants' request for judicial notice.

### 2. Exhibit B

Defendants argue that judicial notice of Exhibit B is appropriate because it is incorporated by reference—the complaint references a webpage, which in turn references Exhibit B. (Dkt. No. 16 at 4–5.) First, the webpage is not central to Plaintiff's claim. (*See* Dkt. No. 1.) Second, this is again an improper attempt by Defendants to "create[] a defense to the well-pled allegations in the complaint . . . ." *See Khoja*, 899 F.3d at 1002. Plaintiffs' complaint says nothing about Exhibit B and does not allege that it is a defective product. (*See* Dkt. No. 1.) Defendants' request for judicial notice of Exhibit B is DENIED.

### 3. Exhibit C, H, and I

Defendants argue that judicial notice of Exhibits C, H, and I is appropriate because Plaintiffs put the websites "at issue," so the entirety of the websites and social media pages

should be subject to judicial notice under the incorporation-by-reference doctrine. (Dkt. No. 16 at 5, 6.) The webpages in Exhibit C promote and market the product in Exhibit B. (Dkt. No. 17-3 at 4–5.) For the same reasons Defendants' request is inappropriate as to Exhibit B, it is inappropriate as to Exhibit C. *See supra* Section II.B.2. Moreover, with regard to all three exhibits, Plaintiffs reference to a social media page or website in their complaint does not put that page "at issue," so as to make the entirety of the website subject to judicial notice. *See Khoja*, 899 F.3d at 1003–04. In order for incorporation by reference to be applicable, Plaintiffs' reference to the webpages must serve as the basis of Plaintiffs' complaint, which it does not. (*See* Dkt. No. 1.) Defendants' request for judicial notice of Exhibits C, H, and I is DENIED.

### 4. Exhibits F and G

Defendants argue that Exhibits F and G are subject to judicial notice because they were obtained from a government website and their accuracy cannot reasonably be questioned. (Dkt. No. 16 at 6.) The Court agrees that trademark registrations downloaded from government websites are subject to judicial notice under Federal Rule of Evidence 201(b). Defendants' request for judicial notice of Exhibits F and G is GRANTED.

### 5. Exhibit J

Defendants argue that Exhibit J is subject to judicial notice because it is a chart of facts compiled from a government website and as such, the facts' accuracy is not subject to reasonable dispute. (Dkt. No. 16 at 7.) Exhibit J only indicates the seasonality of crops in Washington—when the harvest or flavor of the food is at its peak—and not a definitive chart of when crops are or can be grown. (Dkt. No. 17-3 at 49–50.) Because the seasonality of these crops is not subject to reasonable dispute, Defendants' request for judicial notice of Exhibit J is GRANTED.

### 6. Exhibit K

Defendants argue that Exhibit K is subject to judicial notice because it is census data summarized in a list format, and census data is not subject to reasonable dispute. (Dkt. No. 16 at 7.) Census data is often subject to judicial notice. *See United States v. Esquivel*, 88 F.3d 722, 727

(9th Cir. 1996). Therefore, Defendants' request for judicial notice of Exhibit K is GRANTED.

### C. Reasonable Consumer

Although they explain the theory in different ways, Defendants' argument for dismissal boils down to the following—all of Plaintiffs' claims fail because a reasonable consumer would not be misled by the Products' packaging. (*See* Dkt. No. 15.) Despite the fact that Plaintiffs bring claims under numerous states' laws, the parties appear to agree that whether any of Plaintiffs' claims may proceed depends on a "reasonable consumer" analysis. (*See* Dkt. Nos. 15, 22.) To establish deception under the "reasonable consumer" standard, there must be "more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public[,] . . . acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)) (citation omitted). It is a "rare situation" in which granting a motion to dismiss claims based on the reasonable consumer standard is appropriate. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

Defendants assert three theories why Plaintiffs' claims cannot survive the reasonable consumer standard—(1) no reasonable consumer could believe that all 81 Products, and all 131 of those Products' ingredients, came from the same small farm in Washington; (2) no feature of the packaging—whether the Skagit Valley emblem, the Cascadian Farm brand name, or the picturesque background—is itself actionable as a misrepresentation; and (3) even if a reasonable consumer could be confused by the Products' packaging, disclaimers and other information on the packaging resolves any ambiguity. (Dkt. No. 15.)

#### 1. All 81 Products Coming from the Same Farm

Plaintiffs allege that 81 different Products deceive reasonable consumers because the packaging misrepresents that the Products, or a substantial portion of their ingredients, are

1  produced in Washington. (*See* Dkt. No. 1.) Defendants argue that this allegation is
2  unbelievable—no reasonable consumer could believe that all 81 of these Products, made up of
3  131 different ingredients, were made on the same small farm in Washington. (Dkt. No. 15 at 27–
4  29.) Defendants misconstrue Plaintiffs' allegations. Plaintiffs do not allege that each or any of
5  the individual Plaintiffs were led to believe that all 81 Products came from the same farm. (Dkt.
6  No. 1.) Instead, they allege that specific Plaintiffs purchased one or a few different Products and
7  believed that those came from a small Washington farm. (*Id.*) If a specific Plaintiff is only aware
8  of and only buys a few Products, that Plaintiff may reasonably believe that those few Products,
9  or a substantial portion of their ingredients, are produced in Washington.

Furthermore, the fact that some of the Products are produced with multiple ingredients does not defeat Plaintiffs' claims. The cases Defendants cite are distinguishable—Plaintiffs are not alleging, for example, that they believed that a Fig Newton's fruit filling was *only* real, whole fruit because the packaging said "made with real fruit." *See Manchouck v. Mondelez Int'l Inc.*, 2013 WL 5400285, slip op. at 3 (N.D. Cal. 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015). Plaintiffs do not allege that they believed that all of the ingredients of multi-ingredient Products were sourced from Washington; instead, they allege that "all or a substantial portion of the ingredients" were sourced from Washington. (*See* Dkt. No. 1 at 2.) It could be reasonable to assume, for example, that the granola in a multi-ingredient granola bar is sourced from Washington. Therefore, Defendants' motion to dismiss Plaintiffs' claims based on this theory is DENIED.

2. <u>Individual Features of Products' Packaging</u>

Defendants argue that no individual feature of the Products' packaging could lead a reasonable consumer to believe that the Products are produced in Washington. (Dkt. No. 15 at 22–25.) Defendants highlight three distinct features of the packaging—the Skagit Valley emblem, the Cascadian Farm brand name, and the picturesque background—and argue that none of these features in isolation is an actionable misrepresentation. (*Id.*) As a preliminary matter, the

Court is skeptical that each allegedly deceptive feature should be analyzed in isolation. Plaintiffs' claim is that the packaging as a whole is deceptive. (*See* Dkt. No. 1.)

Regardless, there are portions of the Products' packaging that may be actionable misrepresentations. For example, Defendants argue that the Cascadian Farm brand name cannot qualify as an actionable misrepresentation because a trademark may reference a historical origin without representing that it literally comes from just one place. (*See* Dkt. No. 15 at 23–24) (citing *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, slip op. at 4 (S.D. Cal. 2012)). But in *Rooney*, the plaintiff relied solely on the "Sugar in the Raw" brand name to establish deception. *Rooney*, 2012 WL 1512106, slip op. at 4. It was not because the alleged deceptive feature was a brand name that the court found no liability[3]—the court found no liability because it was unreasonable for a consumer to believe that the sugar product was entirely raw and unprocessed. *See id.* Here, it is not implausible that a consumer could believe the Products came from a Cascadian farm because of the "Cascadian Farm" brand name, particularly in light of the corresponding Skagit Valley emblem.[4]

As another example, Defendants argue that the Skagit Valley emblem is not deceptive as a matter of law because it is merely noting the origin of the Products—something that courts have found nonactionable. (Dkt. No. 15 at 24.) But the emblem can fairly be read as indicating the current source of the Products, not just their historical roots. Again, the cases Defendants cite are distinguishable. For example, in *Dumas v. Diageo PLC*, 2016 WL 1367511, slip op. at 4

---

[3] The *Rooney* court used 15 U.S.C. § 1052(e)(1)'s prerequisite to acquiring trademark registration—that a mark must not be deceptively misdescriptive—as a way to bolster its argument. *Rooney*, 2012 WL 1512106, slip op. at 5. But again, this is only conclusive because the plaintiff in *Rooney* relied strictly on the sugar product's brand name as a basis for its claims. *See id.* at slip op. 4–5.

[4] As a corollary argument about the Products' brand name, Defendants argue that the brand name is not a violation of 21 C.F.R. § 101.18 because it is not deceptively misdescriptive, as it is "generally understood by the consumer to mean the product of a particular manufacturer or distributor." (Dkt. No. 15 at 33–34) (citing 21 C.F.R. § 101.18(c)(i)). But whether that is true is a question of fact—a reasonable consumer could be deceived by the brand name, given the other features of the Products' packaging.

ORDER
C19-0005-JCC
PAGE - 9

(S.D. Cal. 2016), the court found that the packaging of a Jamaican-style lager, Red Stripe, was not misrepresentative of its place of production, where the phrases "Jamaican Style Lager" and "The Taste of Jamaica" were on of the packaging. This was because these phrases cannot fairly be read as asserting that the product still comes from Jamaica—the first phrase's use of "style" indicates that the beer is similar to, or reminiscent of, beer from Jamaica; the latter phrase is something intangible that "evokes the spirit or feeling of Jamaica." *Id.*

On the other hand, in *Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453, slip op. at 6 (N.D. Cal. 2017), the court found that the packaging of Kona beer, a beer that originated in Hawaii, could lead a reasonable consumer to believe that the product was produced in Hawaii. The product's packaging included a map of Hawaii marking the location of the brewery and the statement: "We invite you to visit our brewery and pubs whenever you are in Hawaii." *Id.* The court found these features were "specific and measurable representations of fact that could deceive a reasonable consumer into believing that . . . Kona beer [was] brewed in Hawaii." *Id.*

The Skagit Valley emblem is much more akin to the packaging in *Broomfield* than the packaging in *Dumas*. Although it varies slightly between Products, generally the Skagit Valley emblem includes the following phrases: "VISIT OUR HOME FARM," "SKAGIT VALLEY, WA," and "SINCE 1972." (*See* Dkt. No. 1.) These phrases indicate a specific place that the Product is produced and that the consumer can visit, *see Broomfield*, 2017 WL 3838453, slip op. at 6, not a feeling that the Product is "similar to" or "evokes the spirit of" Washington, *see Dumas*, 2016 WL 1367511, slip op. at 4. Therefore, because the individual features of the Products' packaging are not, as a matter of law, nonactionable, Defendants' motion to dismiss based on this theory is DENIED.

### 3. Disclaimers Resolve Ambiguity

Defendants' final overarching theory of dismissal is that even if the Products' packaging is ambiguous about the Products' place of production, other labels on the Products resolve any

ambiguity.[5] (Dkt. No. 15 at 26–27.)

> Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed.

*In re 100% Grated Parmesan Cheese*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017). Assuming *arguendo* that the Court granted judicial notice of Exhibit A, Defendants point to a disclaimer that appears on most (but not all) of the Products to argue that the disclaimer resolves any ambiguity. (*See* Dkt. No. 15 at 26–27.) To begin with, Defendants' argument presumes that the Products' packaging does not contain affirmative misrepresentations, and is thus not deceptive. In order for a disclaimer to be sufficient to defeat Plaintiffs' claims, the Court must first find that the Products' packaging is ambiguous, instead of an affirmative misrepresentation. *See Williams*, 552 F.3d at 939. As explained, a reasonable consumer could find that the Products' packaging is an affirmative misrepresentation, and not just ambiguous. *See supra* Sections II.C.1–2. And even if a reasonable consumer determined that the packaging is only ambiguous, whether the disclaimer is sufficient to resolve any ambiguity is a question of fact. *See, e.g., Kumar v. Salov N. Am. Corp.*, 2015 WL 457692, slip op. at 3 (N.D. Cal. 2015). Therefore, because a reasonable consumer could find both that the front packaging contains affirmative misrepresentations, and that any disclaimer does not resolve ambiguity, Defendants' motion to dismiss based on this theory is DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 15) and motion to stay discovery[6] (Dkt. No. 33) are DENIED.

---

[5] Ultimately, Defendants make a similar argument about disclaimers with regard to alleged Tariff Act violations. (Dkt. No. 24 at 20–21.) The same analysis applies.

[6] Defendants' motion to stay discovery (Dkt. No. 33) is premised entirely on the theory that Defendants should not be required to participate in discovery because Defendants' motion to dismiss "may moot discovery entirely[, ]or substantially change its scope." (*See* Dkt. No. 33.)

DATED this 13th day of June 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

While this theory to stay discovery is dubious, the merits of the motion are irrelevant now that the Court has denied Defendants' motion to dismiss in full.